**James PATRASSO, Petitioner–Appellant,**

v.

**Keith O. NELSON, Respondent–Appellee.**

**No. 96–3962.**

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1997.

Decided Aug. 5, 1997.

Marc W. Martin (argued), Chicago, IL, for Petitioner–Appellant.

Robert K. Villa (argued), Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before POSNER, Chief Judge, and MANION and ROVNER, Circuit Judges.

MANION, Circuit Judge.

James Patrasso, contending that he was denied the effective assistance of counsel at trial, appeals the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Because we conclude that Patrasso's counsel was ineffective during the sentencing phase of his trial, we affirm in part and reverse in part.

## I.

James Patrasso was convicted in 1983 of two counts of attempted murder and two counts of aggravated battery. According to the evidence the state introduced at the bench trial, on February 13, 1982, Patrasso had an altercation with Guy Sisco, the owner of Guy's Steak House, when Sisco refused to let Patrasso (whom Sisco had known for about a year) into the restaurant. About fifteen minutes later Patrasso walked into the restaurant with a gun. He shot Sisco in the chest and Sisco fell behind the bar, then he shot at George Boulahanis, a customer sitting at the bar, who ducked and ran toward the restaurant's kitchen. As he ran, Boulahanis was shot in the hip. Patrasso then returned to Sisco, stood over him, pointed the gun at his head, and pulled the trigger. The gun did not fire. Both Sisco and Boulahanis were treated at the hospital and survived the incident.

Patrasso was indicted on two counts of attempted murder and four counts of aggravated battery. The indictment, as well as the bill of particulars and the grand jury testimony, stated that the crimes occurred on February 13, 1983. The complaint from the preliminary hearing and the discovery material turned over to the defense correctly cited the date in question as February 13, 1982.

At trial Patrasso was represented by attorney Patrick Muldowney. Muldowney, who had not tried any felony cases in the ten years preceding Patrasso's trial, did little to prepare for trial. The sole defense was the variance in dates between the indictment and the State's proof. Muldowney made no opening argument, his cross-examinations of the State's witnesses were perfunctory, he asked Patrasso only one question when Patrasso testified, and he offered a two-sentence closing argument only in response to the court's urging. Patrasso was convicted on all counts.

Muldowney filed a post-trial motion for arrest of judgment, arguing that the variance between the indictment and the State's proof prejudiced his client's defense. The court denied the motion because counsel and Patrasso were aware of the correct date, which was provided in a myriad of discovery materials submitted to the defense. When the case proceeded to sentencing directly after hearing arguments on the motion, the State offered aggravating factors, but Muldowney did not offer any mitigating factors. The court then sentenced Patrasso to the maxi-

mum extended term of sixty years imprisonment, finding the crimes "brutal and heinous."

Patrasso obtained new counsel, Gregory Vasquez, who moved for a new trial on the basis of ineffective assistance of counsel. The trial court held an evidentiary hearing at which Muldowney testified that he did not consult with Patrasso regarding the facts of the case (he saw Patrasso at the courthouse prior to hearings, but did not question him about the circumstances of the incident). He also did not discuss the proposed defense with his client, interview witnesses or review any of the police and medical records provided by the State, prepare cross-examinations of the State's witnesses, or prepare his client to testify. He testified that he concentrated solely on the date given in the indictment and the fact that Patrasso was in jail in Los Angeles on that date. The court found that Muldowney's reliance on the variance defense was a trial tactic, though an unsuccessful one. It also noted that Muldowney may have had strategic reasons for not presenting any mitigating evidence, given Patrasso's background and criminal history. Thus, it denied Patrasso's motion for a new trial.

Patrasso appealed to the Illinois Appellate Court, raising among other issues a challenge to counsel's effectiveness. He cited several examples of trial counsel's ineffective assistance: counsel's total reliance on the variance defense; counsel's lack of experience in criminal law; counsel's failure to communicate with Patrasso before trial and consequent failure to develop the facts of the case; counsel's failure to investigate or prepare the case; and counsel's trial demeanor. In another argument, over the propriety of imposing an extended sentence, Patrasso noted that counsel had failed to offer any evidence in mitigation during the sentencing hearing. The appellate court determined that Muldowney had provided effective assistance, though it did not cite the then recently decided cases of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *People v. Patrasso,* 127 Ill.App.3d 1162, 91 Ill.Dec. 383, 483 N.E.2d 729 (1984) (unpub-

lished). The Supreme Court of Illinois denied leave to appeal.

Patrasso later filed a petition for postconviction relief in Illinois state court, renewing his claim that he was denied the effective assistance of counsel. The petition incorporated further information about Sisco and Boulahanis and the circumstances of the crime. According to Patrasso, whose assertions were supported by evidence submitted during federal criminal prosecutions of Sisco and Boulahanis for RICO and other offenses, Boulahanis owned a lounge and house of prostitution named My Uncle's Place, with Sisco being Boulahanis's second-in-command. Sisco and Boulahanis were also running a large cocaine distribution operation, at least in part from Guy's Steak House. Patrasso did not merely know Sisco and Boulahanis, but had worked for them as a bouncer at My Uncle's Place. They habitually hooked their employees, including Patrasso, on cocaine, and at the time of the incident Patrasso owed them $3,000 for cocaine. Patrasso had quit working at My Uncle's Place, and Boulahanis and Sisco were concerned about getting their money. After hearing from messengers that Sisco and Boulahanis urged payment (or else), Patrasso went to see them early in the morning of February 13, 1982. After they had snorted cocaine, there was an argument: when Patrasso refused to return to work and told them he would not pay interest on the money, Sisco hit Patrasso on the side of the head with a blackjack, rendering Patrasso unconscious. When Patrasso awoke he went to get his car, which was parked at Guy's Steak House. While there he went into the building, got into a fight with Sisco, and was asked to leave by the police. He went back in with a pistol ten minutes later, intending to make Sisco and Boulahanis leave him alone in the future, and shot them when it appeared they were going for weapons that Patrasso had reason to believe were stored under the bar and in the kitchen. Patrasso argued that, had his trial and appellate counsel consulted him, they would have been able to use this information to advocate possible defenses and impeach the State's witnesses.

The petition was denied. On appeal the Illinois Appellate Court held that the issue of

trial counsel's assistance was barred by *res judicata* because it had been decided on direct appeal. It went on to decide that Patrasso received effective assistance of post-trial and appellate counsel because he could not show any prejudice from his trial counsel's omissions. *People v. Patrasso*, 271 Ill. App.3d 1087, 208 Ill.Dec. 372, 649 N.E.2d 428 (1994). Again the Supreme Court of Illinois denied leave to appeal. 163 Ill.2d 578, 212 Ill.Dec. 432, 657 N.E.2d 633 (1995).

Having exhausted his state remedies, Patrasso filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, alleging, among other claims, that he had been denied the effective assistance of trial counsel guaranteed by the Sixth Amendment. The district court denied the petition, and Patrasso appeals only the issue of trial counsel's ineffectiveness.

## II.

### A.

■ On appeal Patrasso argues that trial counsel Patrick Muldowney was ineffective during both the guilt phase and the sentencing phase of Patrasso's trial. Because Patrasso's petition was filed before April 24, 1996, we use the standards applicable before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996. *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481(1997). We review the district court's legal determinations de novo, but presume that the state court's factual determinations are correct. *Stone v. Farley*, 86 F.3d 712, 716 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 973, 136 L.Ed.2d 857 (1997).

■ The State urges us to find that Patrasso has procedurally defaulted his ineffectiveness claims because he failed to argue them during his direct appeal. "Federal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim, when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a 'fundamental miscarriage of justice.'" *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir.1996). "Forfeiture under § 2254 is a question of a state's internal law:

failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan v. McBride*, 74 F.3d 144, 146, *modified*, 79 F.3d 578 (7th Cir.1996). The record shows that Patrasso, in a rather disjointed manner, did give the state a full and fair opportunity to address his claims. We thus conclude that Patrasso has preserved his claims for habeas review.

The State relies heavily on the state appellate court's summation of Patrasso's claims to identify the issues raised during Patrasso's direct appeal. That summation, however, does not mention many of the instances of ineffectiveness actually raised at least somewhere in Patrasso's appellate brief. Unfortunately, Patrasso's argument concerning counsel's inaction at sentencing is not clearly presented in the ineffectiveness section of his brief before the appellate court, although the operative facts are included and the relevant assertions appear in a different argument.

■ It would be a close case if we had to decide whether such treatment constituted fair presentment, but we need not make that decision because Patrasso fairly presented his claims, including counsel's ineffectiveness at sentencing, in his state post-conviction proceedings. *Momient–El v. DeTella*, 118 F.3d 535, 538 (7th Cir.1997). "To find that this claim was not procedurally defaulted, we would need to conclude that the specific claim raised by petitioner in this federal habeas petition … was both presented in the post-conviction proceedings and that the Illinois courts addressed the claim on the merits, rather than dismissing the petition on the independent and adequate state law ground of waiver." *Id.* Here the Illinois appellate court addressed Patrasso's ineffectiveness claims and concluded that Patrasso's post-conviction claims regarding trial counsel's assistance were barred by *res judicata*. *Res judicata*, however, is not a bar to consideration of claims in a federal habeas action. "[F]ederal review is precluded only by procedural forfeitures, not by *res judicata* concerns." *Gomez v. Acevedo*, 106 F.3d 192, 196 (7th Cir.), *petition for cert. filed*, (U.S. May 5, 1997) (No. 96–8978); *Emerson v. Gramley*, 91 F.3d 898, 903 (7th Cir.1996), *cert. de-*

*nied,* —— U.S. ——, ——, 117 S.Ct. 1260, 1289, 137 L.Ed.2d 339, 364 (1997). The Illinois appellate court did not consider Patrasso's claims waived, and consequently, we conclude that Patrasso has preserved his ineffective assistance claims for federal review.

### B.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires Patrasso to show that (1) Muldowney's performance fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068 (in other words, that petitioner suffered prejudice from counsel's performance). Under certain circumstances—where there has been a complete denial of counsel, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or where the circumstances make effectiveness impossible—prejudice is presumed. *United States v. Cronic,* 466 U.S. 648, 658–60, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984).

■ Patrasso argues that the magnitude of Muldowney's multiple failures indicate that this case is more appropriately evaluated under *Cronic* and that therefore he does not have to show prejudice. We have held, however, that where ineffectiveness is due to the attorney's lack of preparation or skill-the type of allegations involved in this case-*Strickland* rather than *Cronic* applies. *Henderson v. Thieret,* 859 F.2d 492, 499 (7th Cir.1988). Patrasso had an attorney and the attorney did take some action on his behalf (at least during the guilt phase—the sentencing phase will be discussed separately below). Thus, Patrasso must meet the dual-pronged *Strickland* standard to establish he was denied the effective assistance of counsel during his trial.

Muldowney's performance was probably deficient. *Strickland* held that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91, 104 S.Ct. at 2065–66.

Muldowney, however, did not perform any investigation after discovering the variance, not even such minimal preparation as reading the record of the case or asking his client what happened. He relied solely on the first defense he came across, the variance, a somewhat risky alternative given the then-recent Supreme Court of Illinois decision that an indictment containing an incorrect date was not necessarily fatal to a conviction. *People v. Alexander,* 93 Ill.2d 73, 66 Ill.Dec. 326, 328, 442 N.E.2d 887, 889 (1982). Although, as discussed below, Muldowney may not have had many alternatives, he admitted that he did not even attempt to find any more promising avenues to defend his client. Further, *Strickland* notes that counsel has an "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." 466 U.S. at 688, 104 S.Ct. at 2064. Muldowney failed in these particulars as well.

Regardless of Muldowney's deficiencies, though, in order to demonstrate ineffective assistance Patrasso also has to show that the result of the trial probably would have been different had Muldowney acted competently. This we believe he cannot do, for under Illinois law Patrasso really had no defense to the charges against him.

■ Two possible defenses Patrasso now identifies were voluntary intoxication and self-defense. As the state post-conviction court and the district court concluded, however, Patrasso could not have met the elements of self-defense. "The defense is raised when evidence is presented that unlawful force was threatened against the defendant; that the danger of harm was imminent; that defendant was not the aggressor; that defendant actually believed that danger existed and that the kind and amount of force used was necessary to avert that danger; and that defendant's beliefs were reasonable." *People v. Zolidis,* 115 Ill.App.3d 669, 71 Ill.Dec. 411, 415, 450 N.E.2d 1290, 1294 (1983). To defeat the defense the State need negate only one element beyond a rea-

sonable doubt. *Id.* Here, it is apparent that Patrasso, who walked into the bar with a gun intending to scare Boulahanis and Sisco, was the aggressor in this particular confrontation, and consequently he would not have succeeded on several of the elements required for self-defense.

Additionally, it is unlikely that Patrasso could have asserted a successful voluntary intoxication defense. "Voluntary intoxication is a defense to a specific intent offense . . . if the condition of intoxication negates or makes impossible the existence of the mental state which is an element of the crime." *People v. Crosser,* 117 Ill.App.3d 24, 72 Ill. Dec. 604, 608, 452 N.E.2d 857, 861 (1983). (Both attempted murder and aggravated battery are specific intent offenses. *People v. Rhodes,* 119 Ill.App.3d 1002, 75 Ill.Dec. 741, 748, 457 N.E.2d 1300, 1308 (1983) (attempted murder); *Crosser,* 72 Ill.Dec. at 608, 452 N.E.2d at 861 (aggravated battery).) "[T]he degree of intoxication which will absolve the defendant of responsibility for his criminal conduct must be so extreme that it suspended entirely the power of reason . . . or rendered the defendant wholly incapable of forming the requisite intent to commit the crime in question." *Id.* (internal citations omitted). Patrasso alleges he had been snorting cocaine the morning of the incident. Perhaps so, but he was capable of first confronting and arguing with Sisco and shortly thereafter able to get a gun, return to the bar, and shoot two people. This allegation of taking drugs does not rise to the level of intoxication required by the defense. *See id.* ("The mere fact that the defendant was drunk or intoxicated does not constitute a defense of intoxication.").

Because Patrasso cannot show that he probably would not have been convicted had Muldowney acted differently, we must reject his claim that he suffered ineffective assistance of counsel during the conviction phase of his trial.

## C.

Although Muldowney's performance during the conviction phase of the trial was below professional norms, his performance at sentencing was practically non-existent. At the sentencing hearing (which immediately followed the hearing on the motion in arrest of judgment) the State presented evidence of Patrasso's prior crimes in aggravation. At one point Patrasso himself interrupted the prosecutor and stated "There was no armed robbery." The prosecutor then repeated that the prior crime was attempted armed robbery. The sentencing hearing continued:

> Prosecution: We would also have in aggravation and utmost importance in this case, is the circumstances of the case itself.
>
> Without going into detail, you have heard the evidence in the case, your Honor. We believe that it is very aggravating, the heinous and brutal acts of the defendant in the case itself.
>
> Based upon the defendant's prior record, based upon the acts committed in this trial, we would ask for the maximum sentence, the maximum sentence provided by the extended term for this defendant.
>
> Court: Mr. Muldown[ey]?
>
> Defense: I have nothing.
>
> Court: Anything in mitigation?
>
> Defense: No. Court: Nothing.

Although Muldowney had nothing to say, the prosecution did not say much either. Its aggravation argument occupies less than two pages of transcript. The judge appears to have given the situation plenty of consideration when he stated:

> This was a violent crime. The willful, wanton and heinous behavior of the defendant calls for a severe punishment. . . . I find with his past criminal record, he has had his opportunities to be rehabilitated, and it seems that it has not worked.
>
> It is a necessity on the part of the court, as harsh as it may seem, to impose a sentence in such a way that we feel will keep the public from being faced with a problem like this again on the part of the defendant.

The judge's firm statement notwithstanding, Muldowney's conduct at the sentencing hearing was not objectively reasonable. "Counsel must make a significant effort,

based on reasonable investigation and logical argument, to mitigate his client's punishment." *Eddmonds v. Peters,* 93 F.3d 1307, 1319 (7th Cir.1996) (internal quotation marks and citations omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 1441, 137 L.Ed.2d 548 (1997). Again, as *Strickland* recognized, counsel's strategic choices generally do not support a claim of ineffective assistance. 466 U.S. at 690, 104 S.Ct. at 2065. Such choices include whether to submit mitigation evidence and what type of evidence to submit. *Hall v. Washington,* 106 F.3d 742, 749 (7th Cir.1997). As this court recently found in *Hall,* however, here defense counsel "engaged in neither reasonable investigation nor logical argument." *Id. See also Kubat v. Thieret,* 867 F.2d 351, 368 (7th Cir.1989) ("Given this grossly substandard argument and the fact that defense counsel presented no other evidence—despite the availability of fifteen character witnesses-Kubat's representation at sentencing amounted to no representation at all."); *Martin v. Rose,* 744 F.2d 1245, 1250 (6th Cir.1984) ("The failure of Martin's attorney to participate in the trial made the adversary process unreliable."). We emphasize that we find deficient performance not because Muldowney failed to offer mitigating evidence but rather because he made no effort to contradict the prosecution's case or to seek out mitigating factors. He entirely failed to represent his client, inaction which distinguishes this phase of the trial from the conviction phase.

Unlike *Strickland, Hall* and *Kubat,* Patrasso is not appealing a death penalty. *Strickland* noted that counsel may fulfill a different function in ordinary sentencing proceedings than in the structured setting of a death penalty sentencing proceeding. 466 U.S. at 686, 104 S.Ct. at 2063 ("We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance."). In Patrasso's case, however, the trial court was bound by statutorily authorized standards for imposing an extended term sentence. *See* Ill.Rev.Stat. ch. 38, para. 1005–5–3.2 (since recodified at 730 ILCS 5/5–5–3.2). Patrasso had a right to offer mitigating factors. *See* Ill.Rev.Stat. ch. 38, para. 1005–53.1 (since recodified at 730 ILCS 5/5–5–3.1). Thus, given the judge's stern view toward Patrasso, the crime and the criminal history, it is clear that Muldowney had a role to play in this sentencing proceeding. Lacking the assistance of counsel, Patrasso was left without a defense at sentencing, without an opportunity to argue for a sentence less than the statutory maximum he received.

■ Counsel's performance during the sentencing phase was so lacking that it invites application of *Cronic* rather than *Strickland. Cronic* recognizes that "[i]n some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided." 466 U.S. at 654 n. 11, 104 S.Ct. at 2044 n. 11. Thus, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659, 104 S.Ct. at 2046. In this instance, a defendant does not have to show that counsel's performance resulted in prejudice; instead, if counsel "entirely fails to subject the prosecutor's case to meaningful adversarial testing," prejudice is presumed. *Id.* As we have stated, "The Sixth Amendment right to counsel, of course, guarantees more than just a warm body to stand next to the accused during critical stages of the proceedings; an accused is entitled to an attorney who plays a role necessary to ensure that the proceedings are fair." United States ex rel. *Thomas v. O'Leary,* 856 F.2d 1011, 1015 (7th Cir.1988).

In *Tucker v. Day,* 969 F.2d 155, 159 (5th Cir.1992), the Fifth Circuit held that a defendant was denied the effective assistance of counsel at resentencing where counsel did not consult with his client, had no knowledge of the facts, and acted as a mere spectator during the sentencing hearing. "In this case, *Tucker* was unaware of the presence of counsel, counsel did not confer with *Tucker* whatsoever, and as far as the transcript is concerned, counsel made no attempt to represent his client's interests." *Id.* Patrasso knew his lawyer was standing there, but in other respects Muldowney's

passivity compares to the shadow presence found ineffective in *Tucker*. By his own admission, Muldowney performed no investigation and made no effort to mitigate Patrasso's punishment-omissions especially grievous where, as in this case, the facts and circumstances presented at trial and relied upon heavily at sentencing were one-sided and very possibly inaccurate. Had Muldowney made a strategic choice to withhold possibly damaging evidence, *Strickland* would mandate finding unsuccessful but nevertheless effective assistance. Muldowney, however, barely spoke with his client and performed no investigation; he had no information and so could not have reasonably considered his available strategies. He effectively abandoned his client at sentencing. Where, as here, counsel is in effect absent, *Cronic* directs a finding of prejudice.

### III.

The evidence shows that Muldowney's performance at Patrasso's sentencing hearing was constitutionally substandard, poor enough to impute prejudice to Patrasso's defense and render the result of the sentencing unfair and unreliable. *See Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."). Consequently, although we affirm Patrasso's conviction, with regard to his sentence, we reverse and remand for the issuance of a writ of habeas corpus requiring James Patrasso be given a new sentencing hearing.