In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1276

JOSEPH VAN PATTEN,

*Petitioner-Appellant,*

*v.*

JODINE DEPPISCH,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98 CV 1014—**Rudolph T. Randa**, *Chief Judge.*

ARGUED SEPTEMBER 21, 2005—DECIDED JANUARY 24, 2006

Before COFFEY, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Telephone conversations with clients are a big part of what lawyers do. But can using a telephone while representing a client go too far? This habeas case presents the novel—but, in the endless quest for efficiency, perhaps inevitable—question: What does the law require when a client on the other end of a telephone hookup with his lawyer is standing before a judge, about to relinquish a bevy of important constitutional rights?

Joseph Van Patten was charged with one count of first degree intentional homicide following a fatal shooting in Shawano County, Wisconsin. One day in September 1995,

while he was in jail awaiting trial, Van Patten got a call from his attorney, James B. Connell. Connell informed Van Patten that he would shortly be transported to court for a change of plea hearing. Under an oral agreement Connell had reached with the prosecutor, Van Patten was to enter a plea of no contest to a charge of first degree reckless homicide, with a penalty enhancement for committing the offense while using a dangerous weapon. (Van Patten would later testify that he had some questions about the arrangement which he had been unable to raise in the phone call with Connell.)

At the court hearing later that day, Connell "appeared" via speakerphone. Apparently this was due not to any last-minute problem, but simply for the convenience of everyone's schedules. Connell would later explain that he had appearances in two other counties that day; that the court was holding time for Van Patten's trial; that witnesses were waiting to know whether they would be needed; and that "everyone wanted to get this matter concluded." No one asked Van Patten whether he objected to his attorney's absence from the hearing, or whether he would prefer to reschedule the hearing to a time when his attorney could appear in person.

As the participants huddled around a speakerphone on the judge's bench, the judge encouraged Van Patten to "take all the time you need to confer with your attorney, and we can perhaps get him on the line in a private place so you could talk to him privately also." The judge then informed Van Patten that "[e]verything here is going to be on the record." The court quizzed Van Patten to be sure he understood what was happening at the hearing, including the constitutional guarantees—his rights to a speedy and public trial, to trial by jury, to confront accusers, to compel witnesses, and to not serve as a witness against himself—he was about to forfeit by pleading no contest. Van Patten's only extended comments related to whether he

would be allowed a visit in jail from his daughter. Satisfied that everything was in order, the judge accepted the plea. Two months later, Van Patten was sentenced to a maximum term of 25 years in prison.

After retaining different counsel, Van Patten moved to withdraw his plea, arguing that Connell's failure to appear in person at the change of plea hearing violated his Sixth Amendment right to counsel. At the hearing on that motion, Van Patten testified that he had wanted a jury trial but felt "forced" to enter a no-contest plea because Connell told him if he didn't, the prosecutor would "make sure I would die in prison." Asked whether at any point during the hearing he asked to speak to his attorney on a private line, Van Patten said no, because Connell told him to "just say yes and just go along with everything." Van Patten testified that he would not have entered his plea if his attorney had been present at the hearing. The court denied Van Patten's postconviction motion. Claiming that he was denied his right to the assistance of counsel, Van Patten embarked on an odyssey of appellate proceedings.

The Wisconsin Court of Appeals analyzed Van Patten's Sixth Amendment claim as a complaint of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. The court's review of the attorney's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under *Strickland*'s second prong, the defendant also bears the burden of showing prejudice—that is, a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The state appellate court said its review of the plea hearing transcript "neither indicates any deficiency in the plea colloquy, nor sug-

gests that Van Patten's attorney's participation by telephone interfered in any way with his ability to communicate with his attorney about his plea." Accordingly, the appellate court rejected Van Patten's right-to-counsel claim.[1] The Wisconsin Supreme Court denied further review.

Van Patten then brought his Sixth Amendment claim to the district court as a habeas petition under 28 U.S.C. § 2254. In his recommendation to the district court, the magistrate judge found that Connell's telephonic appearance at the plea hearing had been "effective under *Strickland*," but "ineffective" under *United States v. Cronic*, 466 U.S. 648 (1984).

*Cronic*, which was decided on the same day as *Strickland*, recognizes several circumstances where the two-pronged *Strickland* test does not apply, circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. *Cronic*, not *Strickland*, applies where there has been a "complete denial of counsel"; where counsel has been "prevented from assisting the accused during a critical stage" of the prosecution; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; or under circumstances where "although counsel is available . . . the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the [proceeding]." *Id.* at 659-60 and

---

[1] The state appellate court did acknowledge that Connell's appearance by telephone violated Wis. Stat. § 967.08, which authorizes some proceedings to be conducted by phone but does not permit an attorney to appear by phone at a plea hearing. But the court said this "procedural" violation was "harmless error."

659 n.25. *See also Hollenback v. United States*, 987 F.2d 1272, 1275 (7th Cir. 1993) (recognizing *Cronic* as an "exception" to *Strickland*'s two-part test). A *Cronic* violation can occur where the denial of assistance of counsel was either "[a]ctual or constructive." *Strickland*, 466 U.S. at 692. *See also Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir. 1985). Although he identified *Cronic* as the law governing Van Patten's habeas petition, the magistrate judge believed—and recommended to the district judge (incorrectly, as we will explain)—that the violation could be considered "harmless error."

Acting on the recommendation, the district court made two holdings that are difficult to reconcile. It endorsed the magistrate judge's analysis that counsel's failure to appear in person, albeit "harmless error," was "a violation of Van Patten's Sixth Amendment right to effective assistance of counsel" under *Cronic*. But the district court also concluded that the state appellate court had "properly identified and applied *Strickland*," rather than *Cronic*, as the appropriate legal framework. (Under *Strickland*, it seems clear Van Patten would have no viable claim.)

Thus, we must resolve two questions: Did the state court err in applying *Strickland*, rather than *Cronic*, when it decided Van Patten's Sixth Amendment claim? If the state court did apply the wrong law and Van Patten was denied assistance of counsel under *Cronic*, did the district court err in applying a harmless-error analysis to defense counsel's failure to appear in person at the plea hearing? We conclude that the answer to both questions is yes.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant habeas relief from a state court conviction if it finds the state court's adjudication of a constitutional claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[2] We review the district court's decision rejecting Van Patten's habeas petition *de novo*. *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003).

The Sixth Amendment's right-to-counsel guarantee recognizes "the obvious truth that the average defendant does not have the professional legal skill to protect himself

---

[2] The state argues that because the Supreme Court has never decided a case involving counsel's participation in a plea hearing by telephone, the state appellate court's application of *Strickland* to this case did not "result[ ] in a decision that was contrary to . . . clearly established federal law," and thus a federal court may not grant habeas relief. This argument misapprehends the AEDPA regime. "Factual contexts of cases may be regarded as 'materially indistinguishable' because their legal implications are clearly the same, notwithstanding that the facts themselves are significantly different." RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE 1439 n.24 (4th ed. 2001) (citing *Ramdass v. Angelone*, 530 U.S. 156, 180 (O'Connor, J., concurring)). One of the most obvious ways a state court may render a decision "contrary to" the Supreme Court's precedents is when it sets forth the wrong legal framework. *See Williams*, 529 U.S. at 397-98 (state court's decision was contrary to clearly established law because it mischaracterized the appropriate rule for evaluating defendant's Sixth Amendment claim). Moreover, a state court decision is also an "unreasonable application of" Supreme Court precedent if it "refuses to extend [an established legal] principle to a new context where it should apply." *Id.* at 407. Thus, if the state court got its decision wrong because it identified and applied the wrong precedent—as we will explain it did in this case—a federal court may award collateral relief.

when brought before a tribunal with power to take his life or liberty." *Johnson v. Zerbst*, 304 U.S. 458, 462-63 (1938). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *Cronic*, 466 U.S. at 654 (citation omitted). Thus, a defendant requires an attorney's "guiding hand" through every stage of the proceedings against him. *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *Cronic*, 466 U.S. at 658. It is well-settled that a court proceeding in which a defendant enters a plea (a guilty plea or, as here, a plea of no contest) is a "critical stage" where an attorney's presence is crucial because "defenses may be . . . irretrievably lost, if not then and there asserted." *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961). *See also White v. Maryland*, 373 U.S. 59, 60 (1963); *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1014 (7th Cir. 1988). Indeed, with plea bargaining the norm and trial the exception, for most criminal defendants a change of plea hearing is *the* critical stage of their prosecution.

In deciding whether to dispense with the two-part *Strickland* inquiry, a court must evaluate whether the "surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel," *Cronic*, 466 U.S. at 666, and thus "justify a presumption that [the] conviction was insufficiently reliable to satisfy the Constitution," *id.* at 662. In this case, although the transcript shows that the state trial judge did his best to conduct the plea colloquy with care, the arrangements made it impossible for Van Patten to have the "assistance of counsel" in anything but the most perfunctory sense. Van Patten stood alone before judge and prosecutor. Unlike the usual defendant in a criminal case, he could not turn to his lawyer for private legal advice, to clear up misunderstandings, to seek reassurance, or to discuss any last-minute misgivings. Listening over an audio connection,

counsel could not detect and respond to cues from his client's demeanor that might have indicated he did not understand certain aspects of the proceeding, or that he was changing his mind. If Van Patten wished to converse with his attorney, anyone else in the courtroom could effectively eavesdrop. (We assume the district attorney would balk if he were expected to conduct last-minute consultations with his staff via speakerphone in open court, "on the record," with the defendant taking in every word.) No advance arrangements had been made for a private line in a private place, and even if one could "perhaps" have been provided, it would have required a special request by Van Patten and, apparently, a break in the proceedings. In short, this was not an auspicious setting for someone about to waive very valuable constitutional rights.

Considering all the ways he was foreclosed from receiving an attorney's guidance and support at his hearing, it is clear to us that Van Patten's case must be resolved under *Cronic*. Thus, the state appellate court arrived at a decision contrary to the Supreme Court's precedent when it analyzed the case under *Strickland* (indeed, the state court's opinion never even acknowledges *Cronic*), and the district court erred when it endorsed that decision. Properly analyzed, Van Patten's claim is not a complaint about his attorney's effectiveness; rather, it points to a structural defect in the proceedings against him. When a defendant is denied assistance of counsel at a stage where he must assert or lose certain rights and defenses, the error "pervade[s] the entire proceeding." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (citing *White* and *Hamilton*). *See also Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (a trial is "presumptively unfair . . . where the accused is denied the presence of counsel at 'a critical stage'" which holds "significant consequences for the accused") (citations omitted); *Cronic*, 466 U.S. at 659 (same).

Van Patten does not allege, for example, that his attorney botched his defense through bad legal judgments, or misinformed him of the ramifications of his plea. Rather, the arrangements under which the hearing was conducted, with defendant and counsel unable to see or communicate privately with each other, prevented Van Patten from receiving the assistance that the Sixth Amendment guarantees. However acceptable an attorney's performance may otherwise be by *Strickland* standards, it is beside the point if the attorney is prevented by the design of the proceeding from providing the full benefit of his skills when his client needs them most. Although the record may make the proceeding appear to have been routine and proper, we cannot know what Van Patten might have done had he been treated like any other defendant with counsel at his side. Under such unique circumstances, a plea cannot meet the constitutional requirement that it be intelligent and voluntary. *See Brady v. United States*, 397 U.S. 742, 749 (1970) (voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it"); *White*, 373 U.S. at 60 (when defendant enters a plea outside the presence of counsel, "we do not stop to determine whether prejudice resulted: 'Only the presence of counsel could have enabled [the] accused to know all the defenses available to him and to plead intelligently.'" (quoting *Hamilton*, 368 U.S. at 55)).

Getting the attorney on speakerphone may have been better than nothing. But the Sixth Amendment requires more than "formal compliance" with its guarantees. *Cronic*, 466 U.S. at 654 (citation omitted). *See also Childress v. Johnson*, 103 F.3d 1221, 1231 (5th Cir. 1997) (applying *Cronic* where defense counsel in a plea hearing functioned as little more than "standby counsel"). And so we think it problematic to treat assistance of counsel as a formality to be overcome through creative use of technology so that everyone can keep their calendars in order.

The state argues against applying *Cronic* here because plea hearings do not involve presentation of evidence and, in the state's view, simply formalize bargains previously negotiated by the prosecution and defense. "[D]efense counsel's adversarial-testing role essentially disappears" in a plea hearing, the state reasons in its brief, and thus a telephone appearance is good enough. But the state's conception of counsel's role is too limited.

Defense counsel should be fully engaged at a plea hearing no less than at trial because in both settings, "the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Cronic*, 466 U.S. at 654 (quoting *United States v. Ash*, 413 U.S. 300, 309 (1973)). *See also Childress*, 103 F.3d at 1227 ("A defendant is constitutionally entitled to the *active* assistance of counsel at a plea hearing.") (emphasis added). Defense counsel must also ensure that the prosecutor fully performs his end of whatever deal has been struck. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled.") By the state's logic, if a plea hearing is merely *pro forma*, the state could be represented as effectively by a clerk or paralegal as by one of its professional prosecutors. But however routine such hearings may have become, the Supreme Court has not revised its view that entering a guilty plea (or its equivalent, as here, a plea of no contest) is "a grave and solemn act," *Brady*, 397 U.S. at 748, to be treated, like all phases of the criminal process, as a "confrontation between adversaries," *Cronic*, 466 U.S. at 657.

Physical presence is necessary not only so that counsel can keep an eye on the client and the prosecutor, but so the court can keep an eye on counsel. Even if a private line had been arranged for Van Patten to speak with his attorney, we would regard long-distance lawyering in critical-stage proceedings as inadequate to safeguard

effective assistance of counsel and the integrity of the judicial process. This point underscores why *Cronic*, not *Strickland*, applies here.

Over a phone line, it would be all too easy for a lawyer to miss something. For example, she might prejudice her client by failing to make some important point during the proceedings and later claim it was a tactical decision (in which case *Strickland* mandates a large benefit of the doubt), when in reality she wasn't paying attention. Or an attorney might realize he had neglected to inform the client of some crucial piece of information but be tempted to let it pass rather than broadcasting the issue to everyone in the room. *Cf. Ivy v. Caspari*, 173 F.3d 1136 (8th Cir. 1999) (defendant's guilty plea was not knowing and voluntary where counsel had failed to provide adequate explanation of elements of offense and other crucial information). On collateral review, courts can rarely assess an attorney's performance from the printed record alone. Even assuming that counsel could hear and understand every word (and how many people who have experienced speakerphones or conference calls would stake their liberty on *that* assumption?),[3] the client or the judge might never know whether the defense attorney was hanging on every word, reading documents in another case, surfing the web, or falling asleep.[4] *Cf. Burdine v. Johnson*, 262 F.3d 336 (5th Cir. 2001) (en banc), *cert. denied sub nom. Cockrell v. Burdine*,

---

[3] At the plea hearing, the judge instructed the defendant: "Mr. Van Patten, we are going to put your attorney on the speakerphone, so I want you standing up a little closer to make sure he can hear you. I think you will be able to hear him, but sometimes they cannot hear you."

[4] Even if we assume that busy attorneys never do such things during conference calls with their clients, what might we be asked to accept next? Offshore defense-attorney call centers? Letting the defendant confer with counsel via Blackberry?

535 U.S. 1120 (2002) (under *Cronic*, defendant was denied assistance of counsel when his attorney repeatedly dozed during trial).

Having decided that the circumstances surrounding Van Patten's hearing justify a presumption of prejudice under *Cronic*, we must address the district court's finding that defense counsel's constructive absence was nonetheless harmless error.

In his recommendation, the magistrate judge relied on two decisions, *United States v. Morrison*, 946 F.2d 484, 503 (7th Cir. 1991), and *Siverson v. O'Leary*, 764 F.2d 1208 (7th Cir. 1985), where we said counsel's absence in some circumstances might be presumptively prejudicial yet still be subject to a harmless-error analysis. In *Siverson*, a state habeas case, the defendant's counsel was absent when the jury verdict was returned. In *Morrison*, a lengthy multi-defendant federal drug conspiracy trial, the lawyer for one of the defendants was excused (with his client's permission) from attending three court sessions that did not involve the offering of evidence against the defendant. We viewed these situations as trial errors subject to a harmless-error analysis.

But *Siverson* and *Morrison* also recognized that harmless-error inquiry would not apply where the denial of counsel contaminated the entire proceeding. *See Morrison*, 946 F.2d at 503-04; *Siverson*, 764 F.2d at 1217 n.6. This distinction is underscored by several Supreme Court decisions, which have made clear that while some Sixth Amendment violations are susceptible to harmless-error analysis, *see Arizona v. Fulminante*, 499 U.S. 279, 306-07 (1991) (citing examples), "structural defects" are not, *id.* at 309. *See also Penson v. Ohio*, 488 U.S. 75, 88 (1988) (denial of counsel under the meaning of *Cronic* "can never be considered harmless error"); *Satterwhite*, 486 U.S. at 256-57 (explaining the difference between trial error and "violations that

pervade the entire proceeding"); *Patrasso v. Nelson*, 121 F.3d 297, 305 (7th Cir. 1997) (remanding for grant of a habeas petition without harmless-error analysis after finding attorney's performance at defendant's sentencing hearing was "so lacking that it invites application of *Cronic* rather than *Strickland*"). Because the physical absence of counsel from a hearing where a defendant gives up his most valuable constitutional rights and admits his guilt to a serious charge is a structural defect, the district court erred in finding that the error could be analyzed under a harmless standard.

Although counsel-by-conference call probably could not have been imagined by the Supreme Court in 1938, it is worth remembering that Justice Sutherland in *Powell*—as well as Justice Stevens in *Cronic* more than a half-century later—invoked the metaphor of the "guiding hand" of counsel which a defendant requires at every step. Similarly, we have observed that "[t]he Sixth Amendment . . . guarantees more than just a warm body to stand next to the accused." *Thomas*, 856 F.2d at 1015. In this case, Van Patten didn't get even a warm body.

The judgment of the district court is REVERSED and the case is REMANDED for the entry of an order granting the petition for a writ of habeas corpus. On the subsequent remand to the Circuit Court for Shawano County, the proceedings against Mr. Van Patten can resume with a plea of not guilty in place.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*