In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3288

DERRYLE S. MCDOWELL,

*Petitioner-Appellant,*

*v.*

PHILLIP A. KINGSTON, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 498—**William C. Griesbach**, *Judge.*

ARGUED APRIL 11, 2007—DECIDED AUGUST 15, 2007

Before CUDAHY, KANNE, and WOOD, *Circuit Judges.*

CUDAHY, *Circuit Judge.* The petitioner, Derryle S.
McDowell, was convicted of sexual assault, kidnapping
and armed robbery and was sentenced to 200 years
in prison. At trial, McDowell's trial counsel had him testify
in a narrative form rather than lead him through a
question and answer format. In considering McDowell's
post-conviction motion, the Wisconsin Supreme Court
applied *Strickland v. Washington*, 466 U.S. 668 (1984), and
determined that McDowell's trial counsel's decision to
have McDowell testify in a narrative format without
knowing that he would testify untruthfully and without
notifying McDowell of his decision to do so was deficient,
but still denied relief finding no prejudice. The federal

district court also denied the petition, holding, in part, that the Wisconsin Supreme Court's decision to apply *Strickland*, instead of presuming prejudice under *United States v. Cronic*, 466 U.S. 648 (1984), was not contrary to clearly established federal law. We agree and affirm the denial of McDowell's petition.

## I.  Background

On April 21, 1997, an 18-year-old woman was sexually assaulted by two men near a building at 4720 West Burleigh Street in Milwaukee. After the assault, the victim spat ejaculate onto the ground. Although the victim could not identify her attackers, the State based its case against the defendant Derryle McDowell on evidence collected from the victim's body, clothing and the scene. Namely, the police recovered a sample of the victim's saliva mixed with semen containing McDowell's DNA.

This appeal primarily concerns McDowell's testimony at trial. On the third day of trial, after the State had rested, McDowell's counsel, Attorney Ronald Langford, expressed reservations to the court about his ability to effectively proceed as counsel and asked to withdraw. Specifically, he implied that his concerns related to the possibility that McDowell would testify untruthfully. The trial court advised Attorney Langford of two options: (1) he could recommend to McDowell that he not testify if his intended account was untrue, or (2) take the "middle ground" by calling McDowell to testify in narrative form. (R. 74 at 6-7.) Attorney Langford's request to withdraw from the case was denied. After a short break, Attorney Langford informed the court that:

> Judge, I have no reason to believe in light of what Mr. McDowell has told me that he will not get up there and testify as to the truth. Therefore when he takes

the stand I will be asking him questions, specific questions with respect to his testimony before this jury.

(R. 74 at 12.)

Attorney Langford then gave his opening statement, in which he told the jury that McDowell would testify that he never assaulted the victim and that the area where the crime took place was behind the building where his father lived. Counsel further explained that McDowell had been in the area the night before the assault, had oral sex with his girlfriend and had ejaculated, which would account for his semen's being found at the scene.

After Attorney Langford completed his opening statement, McDowell took the stand. Shortly thereafter, while McDowell was still on the stand, Attorney Langford received a note from the public defender's office which stated: "Tyroler [an appellate attorney in the Office of the State Public Defender] says go with narrative. Tell that to the client. It must be by narrative." (R. 79 at 78.) McDowell's counsel began his examination in the question and answer format, asking three questions about McDowell's age and residence. He then stated, "Mr. McDowell, I want you to look at this jury and tell this jury about the events of April 20 and 21 of 1997. Take your time and speak loudly and clearly, please." (R. 74 at 20.)

The court, apparently confused by this change of plans, called a sidebar conference, after which the court instructed the jury not to consider the opening statements or closing statements of counsel as evidence and directed McDowell's counsel to restate the question. Attorney Langford said, "Again, Mr. McDowell, take your time and tell this jury what you would like for them to know regarding the allegations against you beginning with where you were and what you were doing on April 20,

1997, through the early morning hours of April 21, 1997. Proceed, please." (R. 74 at 22.) In brief, McDowell testified that he and his girlfriend, Sunshine, "fooled around" and had oral sex behind his father's apartment the evening of April 20, 1997. His father caught them in the alley and became angry. He and his father eventually drove Sunshine home, returned to the house later that evening and went to bed. McDowell claims that some key facts were missing from his account which could have been solicited in a question and answer format. The jury ultimately found McDowell guilty of one count of armed robbery, one count of kidnapping and five counts of first degree sexual assault with the use of a weapon. He was sentenced to 200 years in prison and forty years of probation.

McDowell filed a post-conviction motion in the circuit court claiming ineffective assistance of counsel. The circuit court held a *Machner* hearing to determine the validity of McDowell's claim.[1] At the hearing, Attorney Langford testified that he initially believed that McDowell was lying about this sexual activity with his girlfriend. He noted inconsistencies between their accounts, the fact that McDowell introduced this theory of defense only after learning about the DNA evidence and also recounted a conversation with McDowell in which McDowell told him, "I'll say what I need [to] say to help myself out and if I have to say something untruthful[,] I'll say that." (R. 79 at 109.) In preparation for McDowell's taking the stand, Attorney Langford testified that he warned McDowell that he might need to testify in a narrative form and, if he

---

[1] Under *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979), a hearing may be held when a criminal defendant's trial counsel is challenged for allegedly providing ineffective assistance. At the hearing, the trial counsel testifies to his or her reasoning on the challenged action or inaction. *Id.* at 908-09.

did, that McDowell should testify to everything he would want the jury to know because it would be his only opportunity. Attorney Langford also testified that he had intended to lead McDowell through questions, but that his plan later changed when he received the note from the public defender's office. Attorney Langford conceded that he did so without advising McDowell of the change and without having personally concluded that McDowell intended to lie.

The circuit court denied McDowell's petition, finding that McDowell's counsel had reacted in a way that best preserved his client's rights and discharged his own ethical responsibilities, and that the outcome of the trial would not have been different in light of the DNA evidence if McDowell had testified instead in a question and answer format. *See State v. McDowell*, 669 N.W.2d 204, 217 (Wis. Ct. App. 2003). The Wisconsin Court of Appeals affirmed the circuit court's denial of McDowell's petition; however, the court of appeals, unlike the circuit court, found Attorney Langford's performance to be deficient because he did not *know* that McDowell would testify untruthfully when he switched to a form of narrative testimony and failed to inform McDowell of the change of plans. *Id.* at 227. Regardless, the court of appeals, like the circuit court, did not find McDowell to have been prejudiced by this error. *Id.* at 229-30. The Wisconsin Supreme Court affirmed the denial of McDowell's petition on the same ground as that of the court of appeals. *State v. McDowell*, 681 N.W.2d 500, 505 (Wis. 2004).

McDowell then filed a petition for writ of habeas corpus in the Eastern District of Wisconsin. The district court denied the petition finding that the Wisconsin Supreme Court's determination that McDowell was not prejudiced by his trial counsel's performance was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the

United States. *McDowell v. Kingston*, No. 05-C-0498, 2006 WL 2289304, at *1 (E.D. Wis. Aug. 8, 2006). The district court certified the following question for our review:

> Were the state court decisions rejecting petitioner's Sixth Amendment ineffective assistance of counsel claim contrary to clearly established federal law within the meaning of 28 U.S.C. § 2254(d)?

(R. 28 at 2.) In other words, we consider in the present case whether the Wisconsin Supreme Court's decision to apply *Strickland*, which requires a showing of prejudice, instead of *Cronic*, where prejudice is presumed, was contrary to clearly established federal law.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs our review of McDowell's petition for writ of habeas corpus. Relevant for this review, a federal court can grant relief only if the state court's decision: (1) was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established federal law if the state court either "applies a rule that contradicts the governing law" set forth by the Supreme Court or decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). When the claim falls under the "contrary to" clause, the federal court will review the state court decision independently to determine what the clearly established federal law is and whether the state court decision is contrary to that precedent. *Id.* at 378-79.

On appeal, McDowell argues that the Wisconsin Supreme Court erroneously applied *Strickland* and instead should have presumed prejudice under *Cronic*. He raises two grounds in support of this contention. First, the petitioner claims Attorney Langford's failure to lead him through question and answers during his testimony constituted a denial of counsel at a critical stage of the trial or, alternatively, that Attorney Langford's failure constituted an abandonment of McDowell's defense. Second, McDowell argues that Attorney Langford suffered a conflict of interest between his duty of loyalty to his client and his duty to comply with the directions in the note from the public defender's office.

Generally, claims of ineffective assistance of counsel are evaluated under a two-prong analysis announced in *Strickland*. Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 690, 694.

Decided the same day as *Strickland*, the Court in *Cronic* held that in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," prejudice will be presumed. 466 U.S. 648, 658. The Court defined three exceptions to *Strickland* where it is appropriate for a court to presume prejudice: (1) where there is a "complete denial of counsel" or denial at a "critical stage" of the litigation; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is [very] small." 466 U.S. at 659-60; *see also Miller v.*

*Martin*, 481 F.3d 468, 472 (7th Cir. 2007). The Court has subsequently recognized *Cronic* as a "narrow exception" to *Strickland*. *Florida v. Nixon*, 543 U.S. 175, 190 (2004).

## A. Denial of Counsel at a Critical Stage

The petitioner's first argument—that we should presume prejudice because he was actually or constructively denied counsel at a critical stage of the litigation—fails to satisfy the requirements of *Cronic's* first category. The Supreme Court has consistently limited the presumption of prejudice to cases where counsel is *physically* absent at a critical stage.[2] *See Penson v. Ohio*, 488 U.S. 75, 88 (1988) (applying *Cronic* where defense counsel erroneously moved to dismiss any appeal leaving the petitioner "completely without representation during the appeals court's actual decisional process"); *White v. Maryland*, 373 U.S. 59, 60 (1963) (presuming prejudice where defendant pleaded guilty at a preliminary hearing before he was appointed counsel); *Hamilton v. Alabama*, 368 U.S. 52, 54-55 (1961) (presuming prejudice where defendant was completely without counsel when he pleaded guilty to a capital charge and irrevocably waived other pleas); *see also Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir. 1985)

---

[2] There are some cases, typically involving sleeping or unconscious lawyers, where courts have presumed prejudice even though counsel was technically physically present. *See Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001); *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984). But, the alleged "absence" of Attorney Langford is distinguishable from these cases. Arguments concerning constructive denial of counsel are best considered under *Cronic*'s second category—where counsel has "entirely failed to subject the prosecution's case to meaningful adversarial testing."

(applying a presumption of prejudice where the defendant's trial counsel was absent during jury deliberations and at the return of the verdicts). Here, counsel was physically present at all stages of the litigation, including during McDowell's testimony, and therefore, we cannot hold that McDowell was actually denied counsel.

Moreover, McDowell has failed to present any authority from the United States Supreme Court indicating that his testimony, isolated from the rest of his defense, constitutes a critical stage of the litigation. *Cf. Penson,* 488 U.S. at 88 (holding that an appeal constitutes a critical stage); *White*, 373 U.S. at 60 (holding that a "preliminary hearing" where the defendant was allowed to enter a plea constitutes a critical stage); *Hamilton*, 368 U.S. at 54 (holding that an arraignment was a critical stage of the proceedings because available defenses may be irretrievably lost).

The petitioner relies heavily on our decision in *Van Patten v. Deppisch*, 434 F.3d 1038 (7th Cir. 2006) for support of his argument that prejudice should be presumed because McDowell was denied counsel at a critical stage in the proceeding.[3] In *Van Patten*, we held that the Wisconsin appellate court acted contrary to clearly established Supreme Court precedent in applying *Strickland* instead of *Cronic* where petitioner's counsel participated via a conference call at the plea hearing. *Id*. at 1043. McDowell compares *Van Patten* to his circumstances here in urging that, by switching to a narrative format, Attor-

---

[3] The Supreme Court vacated our judgment in *Van Patten* and remanded for reconsideration in light of *Carey v. Musladin*, 127 S.Ct. 649 (2006). *Schmidt v. Van Patten*, 127 S.Ct. 1120 (2007). After reconsideration, we recently reinstated the judgment. *Van Patten v. Endicott*, No. 04-1276, 2007 WL 1654396 (7th Cir. June 5, 2007).

ney Langford became "absent" in a way similar to the trial counsel in *Van Patten*. But, this analogy fails. In *Van Patten*, we placed tremendous emphasis on the fact that counsel was *physically* absent from the proceedings. We explained:

> He could not turn to his lawyer for private legal advice, to clear up misunderstandings, to seek reassurance, or to discuss any last minute misgivings. Listening over an audio connection, counsel could not detect and respond to cues from his client's demeanor that might have indicated he did not understand certain aspects of the proceeding, or that he was changing his mind.

*Id.* Here, McDowell's counsel was physically present at all stages of the litigation. He informed McDowell of the possibility of narrative testimony before he took the stand and instructed him to tell the jury everything he would want them to know. Moreover, whereas there is substantial precedent indicating that a plea hearing is a "critical stage" of the litigation (*see, e.g.*, *White*, 373 U.S. at 60), as already discussed, McDowell has failed to point to any authority from the Supreme Court indicating that the defendant's testimony itself constitutes a critical stage.[4]

Thus, the petitioner has failed to demonstrate that he was denied counsel at a critical stage of the proceedings and, therefore, his claim fails to fit within the first *Cronic* category.

---

[4] *Van Patten* can further be distinguished from the present case. The court in *Van Patten* also indicated that allowing counsel to appear via phone was an error involving a small likelihood of ability to provide effective assistance (of the sort covered by the third *Cronic* category), while here the petitioner does not claim a similar structural error. 434 F.3d at 1043.

**B. Failure to Subject Prosecution's Case to Meaningful Adversarial Testing**

We also cannot presume prejudice under the second *Cronic* category—where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"—because Attorney Langford's deficient representation was not a complete failure. In *Bell v. Cone*, 535 U.S. 685, 697-98 (2002), the Court clarified what constitutes an "entire failure" by drawing a clear distinction between a failure to oppose the prosecution throughout an entire proceeding and a failure to do so at specific points, concluding that a failure at specific points will not trigger a presumption of prejudice. *Id.*; *see also United States v. Morrison*, 946 F.2d 484, 500 n.3 (7th Cir. 1991).

McDowell claims that by switching to a narrative form, Attorney Langford effectively abandoned his defense, rendering him "constructively absent" from the proceedings. The type of failure McDowell asserts is more properly characterized as a failure at a specific point in the litigation rather than a complete failure of the type necessary to trigger a presumption of prejudice under the second category. The record indicates that Attorney Langford did subject the prosecution's case to adversarial testing. He cross-examined witnesses. He gave an opening statement in which he presented McDowell's defense. Additionally, Attorney Langford testified that he warned McDowell prior to his taking the stand that he might have to testify in narrative form and advised him as to what that testimony should entail. "I made it clear to him that once you start talking, make sure you say everything you want to say. You are going to get [only] one kick at the cat." (R. 79 at 116.) Attorney Langford also guided McDowell into his narrative testimony by instructing him to "look at this jury and tell this jury about the events of April 20 and April 21 of 1997. Take your time and speak loudly and clearly, please." (R. 74 at 20.) Attorney Lang-

ford also gave a closing statement, in which he questioned the State's DNA evidence and reaffirmed McDowell's defense. To be clear, we do not question the Wisconsin Supreme Court's determination that Attorney Langford's decision to have McDowell testify in a narrative form was deficient representation since Attorney Langford did not know McDowell would testify untruthfully and did not inform McDowell of the switch in plans. Nonetheless, an isolated mistake, like the one found here, does not constitute a "complete failure to subject the prosecution's case to adversarial testing," nor does it render an attorney "constructively absent" from the proceedings. *Cf. Van Patten*, 434 F.3d at 1044 (applying *Cronic*, but noting that the defendant "does not allege, for example, that his attorney botched his defense through bad legal judgments, or misinformed him of the ramifications of his plea").

*Patrasso v. Nelson*, 121 F.3d. 297 (7th Cir. 1997) further supports this result. In *Patrasso*, in which the defendant's counsel gave no opening argument, asked the defendant only one question during his testimony, conducted "perfunctory" cross-examination of witnesses and, in response to the court's urging, gave only a two-sentence closing statement, we declined to presume prejudice under the second *Cronic* category. *Id.* at 299. We concluded that "Patrasso had an attorney and the attorney did take some action on his behalf." *Id.* at 302. Attorney Langford's performance in the present case clearly surpasses in quality that of the trial counsel's in *Patrasso*. Since we did not apply *Cronic* in that case, we certainly cannot in the present one.

Because Langford's failure was only at a specific point in the litigation and was not a wholesale failure, McDowell's claim fails under the second *Cronic* category. We will not evaluate his claim under the third category, which concerns circumstances in which no attorney could provide effective assistance of counsel, because McDowell does not assert any such structural errors in his petition.

**C.  Conflict of Interest**

McDowell also argues that the Wisconsin Supreme Court should have presumed prejudice because Attorney Langford suffered a conflict of interest between his "duty of loyalty to his client and the duty of adhering to the pressures of that established by the note that was passed to trial counsel at a critical stage of the jury trial." (Petitioner's Reply Br. at 6.)

In *Cuyler v. Sullivan,* 446 U.S. 335, 338 (1980), the defendant alleged ineffective assistance resulting from a "conflict of interest" because his lawyers also represented his co-defendants. The Court held that a presumption of prejudice is appropriate "where an attorney has labored on behalf of a defendant while harboring a conflict of interest." *Id.* at 349-50. A "conflict of interest" is defined as a conflict between a duty of loyalty to a client and a private interest or a conflict between a duty of loyalty owed to one client and the duty owed to another in a multiple represen-tation situation as in *Cuyler. See Black's Law Dictionary* 295 (7th ed. 1999). But, the conflict alleged in the present case is not the kind of conflict at issue in *Cuyler*. Rather, the alleged conflict Attorney Langford experienced between his duty of loyalty to McDowell and his "duty of adhering to the pressures of that established by the note" is better described as a problem of determining the appropriate ethical course. In *Nix v. Whiteside*, 475 U.S. 157, 176 (1986), which McDowell also cites but fails to cite in full, the Court specifically noted that a presumption of preju-dice is not appropriate for conflicts like the one alleged in the present case, explaining that the " 'conflict' . . . imposed on the attorney by the client's proposal to commit the crime of fabricating testimony . . . is not remotely the kind of conflict of interests dealt with in *Cuyler v. Sullivan.*" The Wisconsin Supreme Court correctly noted, "[t]o equate these divided loyalties in [*Cuyler*] with the potential divided loyalties here misses the mark." *State v. McDowell*,

681 N.W.2d at 516. Attorney Langford may have experienced a conflict, but not a conflict of interest warranting a presumption of prejudice pursuant to *Cuyler*.

In conclusion, we hold that the Wisconsin Supreme Court's determination to apply *Strickland*, instead of presuming prejudice under *Cronic*, was not contrary to clearly established federal law. McDowell was not denied counsel at a critical stage of the litigation since Attorney Langford was present throughout the proceedings. Attorney Langford did subject the prosecution's case to "meaningful adversarial testing" and therefore his failure was not a "complete failure." Finally, Attorney Langford's alleged conflict between his duty of loyalty to McDowell and his "duty of adhering to the pressures of that established by the note" is not the type of conflict which warrants a presumption of prejudice under *Cuyler*.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of McDowell's petition for writ of habeas corpus.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*