STATE of Wisconsin, Plaintiff-Respondent,

v.

Ricky C. ANDERSON, Defendant-Appellant.

Court of Appeals

*No. 2015AP2611–CR. Submitted on briefs August 30, 2016.*
*—Decided February 22, 2017.*

2017 WI App 17

(Also reported in 896 N.W.2d 364.)

374

375

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeremy Newman* and *Colleen Marion*, assistant state public defenders, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. Ricky Anderson appeals a judgment convicting him of second-degree sexual assault of a child, as a repeater, and an order denying his postconviction motion for plea withdrawal. Anderson argues the circuit court should have allowed him to withdraw his plea because his statutory right to be present at his plea hearing, during which the court pronounced judgment, was violated when he appeared at that hearing by telephone. Anderson further argues he did not knowingly, intelligently, and voluntarily waive his right to be present at his plea hearing. In the alternative, Anderson argues the fact that he was not present in the same room as his attorney during the plea hearing violated his Sixth Amendment right to counsel.

¶ 2. We conclude Anderson has failed to demonstrate, under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), that his right to counsel was violated during the plea hearing. With respect to Anderson's other argument, we agree that Anderson had a statutory right to be physically present at his plea hearing. We further conclude the circuit court's waiver colloquy regarding Anderson's right to be present at the plea hearing was inadequate. In addition, we reject the State's argument that any error regarding the violation of Anderson's right to be present at his plea hearing was harmless as a matter of law. For the reasons explained below, we therefore reverse the order denying Anderson's postconviction motion and remand for a new postconviction evidentiary hearing, at which the State will have the burden to prove that Anderson knowingly, intelligently, and voluntarily waived his right to be present at his plea hearing.

## BACKGROUND

¶ 3. The State charged Anderson with second-degree sexual assault of a child, as a repeater, contrary to WIS. STAT. § 948.02(2) (2015–16).[1] A final pretrial hearing was scheduled for October 28, 2014. On the same date, Anderson was also scheduled to make an initial appearance in Shawano County case No. 2014CM128, in which he was charged with a single count of misdemeanor theft. Prior to October 28, Anderson's extended supervision in a previous case was revoked, and he was returned to prison.

¶ 4. On October 28, shortly before the scheduled final pretrial hearing, Anderson participated in a telephone conference call from prison with his attorney and the prosecutor, who were both in the prosecutor's office in Shawano. By the end of the call, the parties had reached an agreement to resolve both cases against Anderson. Namely, Anderson agreed to plead guilty to the second-degree sexual assault charge in the instant case, and, in exchange, the State agreed to recommend no more than fifteen years' initial confinement on that charge and to recommend dismissal of the misdemeanor theft charge in case No. 2014CM128.

¶ 5. The October 28 hearing therefore became a plea hearing. Anderson appeared at the hearing by telephone from prison. The judge, Anderson's trial attorney, and the prosecutor were present in the courtroom in Shawano. At the beginning of the hearing, the following exchange took place between Anderson and the circuit court regarding Anderson's appearance by telephone:

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

THE COURT: All right. And, Mr. Anderson, you know, you can be present in person for different things. For our procedure today, realizing the fact that we have a jury trial coming scheduled on November 5 to start, is it okay that we do this by phone today?

MR. ANDERSON: Yes.

THE COURT: So you understand, when I spotted this yesterday, we pursued whether we could get you by internet, then that would have given you the ability to see us and vice versa. But they were already filled up and we could not get that, so this was the next best technology.

MR. ANDERSON: Okay.

THE COURT: So you're aware of that. And [defense counsel] is here in the courtroom with me too.

¶ 6. The circuit court then conducted a plea colloquy with Anderson. After the colloquy, but before it accepted Anderson's plea, the court addressed him as follows:

THE COURT: All right. Also I could vacate the courtroom if you wanted to speak with your attorney and ask him any questions or discuss anything else. Do you feel confident on proceeding right now?

MR. ANDERSON: Yes.

THE COURT: So it's okay that we go ahead right now without talking with your attorney anymore?

MR. ANDERSON: Yes, sir.

¶ 7. The circuit court then accepted Anderson's guilty plea and pronounced him guilty. After the court pronounced judgment, the following exchange took place regarding the sentencing hearing:

> THE COURT: Now at a future sentencing date, we can plan ahead and we can have you here in the courtroom for that. Would you like that, Mr. Anderson?
>
> MR. ANDERSON: Yes.
>
> THE COURT: All right. So we will make arrangements on that.

Finally, just before the hearing ended, the prosecutor interjected, "Your Honor, if I may simply inquire of Mr. Anderson. Is it okay, Mr. Anderson, with you that we do this plea over the telephone?" Anderson responded, "Yes."

¶ 8. On January 14, 2015, Anderson was physically present in the courtroom for his sentencing hearing. At the beginning of the hearing, Anderson's attorney submitted to the circuit court a completed plea questionnaire and waiver of rights form, a one-page addendum related to the guilty plea waiver rule, a one-page recitation of the State's plea offer, a copy of the Information, a document entitled "Defendant's Notifications," and copies of Wisconsin Criminal Jury Instructions 2104 and 2101B. Counsel explained:

> I intended to complete the normal paperwork for a plea entry back when the Court took the plea, but I was surprised to find out that my client was not actually here. He would be appearing by phone.
>
> Today I completed the paperwork. If you believe it would be acceptable, I would like to turn it in now for the record.

The court responded, "Certainly."

¶ 9. The following exchange then occurred between Anderson and the circuit court regarding his plea:

THE COURT: On the plea form here, Mr. Anderson, is this your signature I see here?

MR. ANDERSON: Yes.

THE COURT: Did that occur after you had gone through your rights and procedures again with your attorney?

MR. ANDERSON: Yes.

THE COURT: Now it does indicate here that you have gotten some mental health treatment and also that you're on medication for depression. Do you believe you're understanding things here today?

MR. ANDERSON: Yes.

THE COURT: You seem to be speaking clearly without any unusual pause. And you haven't said a lot, but I did not notice a flat effect [sic] there.

Let me check what else you have here. Okay. We will accept that and mark that as received for today. I don't find it contrary to the earlier finding of knowing, free, voluntary, and understanding waiver of rights and plea entry.

The court ultimately imposed a twenty-one year sentence, consisting of fifteen years' initial confinement and six years' extended supervision.

¶ 10. Anderson subsequently filed a postconviction motion for plea withdrawal. He asserted he should be allowed to withdraw his plea because he was deprived of his right to be present in court during his plea hearing.

¶ 11. The circuit court held a hearing on Anderson's postconviction motion, at which Anderson had the burden of proof. During the hearing, Anderson

testified on direct examination that he did not know when he entered his plea that he had a right to be physically present in the courtroom:

> [POSTCONVICTION COUNSEL:] So were you—were you aware that you had a right to be present in the courtroom when you entered your pleas?
>
> [ANDERSON:] Well I didn't really know what was going on. I was confused because I never really had that happen.
>
> [POSTCONVICTION COUNSEL:] Okay. So you never knew that you had a right to require them to bring you in—to be in the courtroom with everyone?
>
> [ANDERSON:] No.

¶ 12. On cross-examination, Anderson acknowledged the circuit court informed him during the plea hearing that he could be present in the courtroom for "different things." Anderson also acknowledged he had agreed to go forward with the plea hearing by telephone. However, on redirect examination, Anderson clarified that, when the circuit court told him he could be present for "different things," he thought the court meant "[s]entencing, anything, different thing—it was just—I was thinking he was referring to video court." Anderson reiterated he did not know he had a right to "demand to be present in court."

¶ 13. Following Anderson's testimony, the State called Anderson's trial attorney as a witness. Counsel testified that, during the telephone conference just before the plea hearing, Anderson expressed a strong desire to settle the case and enter a plea. Counsel further testified he had no reason to doubt Anderson's competency. Finally, counsel testified he was familiar with the discovery materials provided by the State and

was aware Anderson had confessed to sexually assaulting the victim, a minor who suffered from "developmental delays." Counsel was never asked, and thus did not testify, regarding whether he ever informed Anderson he had a right to be present in court for the plea hearing.

¶ 14. The circuit court denied Anderson's motion for plea withdrawal, concluding Anderson "clearly waived his rights to be present at the plea hearing." Anderson now appeals.

## DISCUSSION

¶ 15. To withdraw a plea after sentencing, a defendant must prove by clear and convincing evidence that plea withdrawal is required to correct a manifest injustice. *State v. Thomas*, 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836. "The 'manifest injustice' test requires a defendant to show 'a serious flaw in the fundamental integrity of the plea.' " *Id.* (quoting *State v. Nawrocke*, 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995)). Here, Anderson asserts he is entitled to withdraw his guilty plea because: (1) he was deprived of his right to be present at his plea hearing; and (2) his right to counsel was violated because he was not in the same room as his attorney during the plea hearing. We will first address Anderson's argument regarding his right to counsel. We will then turn to his argument regarding his right to be present at the plea hearing.

## I. Anderson's right to counsel

¶ 16. The Sixth Amendment to the United States Constitution guarantees that "the accused shall enjoy

the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.[2] "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). A plea hearing qualifies as a "critical" stage of a criminal case. *Iowa v. Tovar*, 541 U.S. 77, 87 (2004). In addition, the Sixth Amendment right to counsel "is the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Anderson therefore had a right to the effective assistance of counsel at his plea hearing, and he asserts his physical separation from his attorney during the hearing violated that right.[3]

¶ 17. The parties dispute the legal standard we should apply to Anderson's claim that his right to the effective assistance of counsel was violated during his plea hearing. Anderson argues his physical separation from his attorney during the hearing was tantamount to a complete denial of counsel. Citing *United States v. Cronic*, 466 U.S. 648 (1984), he contends that a complete denial of counsel is a structural error that is legally presumed to prejudice the defendant and is not subject to a harmless error analysis. In contrast, the State argues the circumstances of this case do not amount to a complete denial of counsel. The State

[2] The Wisconsin Constitution similarly guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel." WIS. CONST. art. I, § 7.

[3] Anderson's postconviction motion did not contain any argument that his right to counsel was violated during the plea hearing. However, Anderson's attorney raised that argument during the postconviction hearing. The circuit court did not expressly address Anderson's right-to-counsel argument in its oral ruling.

further asserts that, to the extent Anderson's right to counsel was violated by his physical separation from his attorney during the plea hearing, the error was harmless.

¶ 18. When a defendant alleges a violation of his or her right to the effective assistance of counsel, we ordinarily apply the framework set forth in *Strickland*. *See Wright v. Van Patten*, 552 U.S. 120, 124 (2008) (per curiam). Under *Strickland*, in order to prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. *Cronic*, however, "recognized a narrow exception" to *Strickland*'s holding, *Florida v. Nixon*, 543 U.S. 175, 190 (2004), in which a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial," *Bell v. Cone*, 535 U.S. 685, 695 (2002). This exception applies when circumstances exist that are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658.

¶ 19. One such circumstance exists when there is a complete denial of counsel—that is, when counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceedings. *Id.* at 659 & n.25. "Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659.

Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Id.* at 659–60.

¶ 20. Anderson argues the circumstances of this case are tantamount to a complete denial of counsel under *Cronic*. In support of this proposition, Anderson relies on *Van Patten v. Deppisch*, 434 F.3d 1038 (7th Cir. 2006), *cert. granted, judgment vacated sub nom. Schmidt v. Van Patten*, 549 U.S. 1163, (2007), *and judgment reinstated sub nom. Van Patten v. Endicott*, 489 F.3d 827 (7th Cir. 2007) (per curiam). In that case, Joseph Van Patten was charged in Shawano County with one count of first-degree intentional homicide. *Id.* at 1040. While in jail awaiting trial, Van Patten received a phone call from his attorney, who informed him he would shortly be transported to court for a change of plea hearing. *Id.* Counsel told Van Patten he had reached an oral agreement with the prosecutor, under which Van Patten was to plead no contest to first-degree reckless homicide, by use of a dangerous weapon. *Id.* At the plea hearing later that day, counsel appeared via speakerphone. *Id.* Following a plea colloquy, the circuit court accepted Van Patten's no contest plea. *Id.*

¶ 21. After sentencing, Van Patten retained different counsel and moved to withdraw his plea, arguing trial counsel's appearance at the plea hearing by speakerphone violated his Sixth Amendment right to counsel. *Id.* The circuit court denied Van Patten's motion, and this court affirmed on appeal. *Id.* at 1041.

Applying the *Strickland* analysis, we concluded the plea hearing transcript did not indicate "any deficiency in the plea colloquy" or suggest "that Van Patten's attorney's participation by telephone interfered in any way with his ability to communicate with his attorney about his plea." *Id.* The Wisconsin Supreme Court denied Van Patten's petition for review. *Id.*

¶ 22. Van Patten then filed a habeas petition in federal court under 28 U.S.C. § 2254. *Deppisch*, 434 F.3d at 1041. The district court denied Van Patten's petition, based on two holdings that the Seventh Circuit subsequently described as "difficult to reconcile." *Id.* at 1042. First, the district court concluded trial counsel's failure to appear in person at the plea hearing, although "harmless error," violated Van Patten's Sixth Amendment right to counsel under *Cronic*. *Deppisch*, 434 F.3d at 1041. Second, the district court concluded the Wisconsin Court of Appeals had properly identified and applied *Strickland*, rather than *Cronic*, as the appropriate legal framework to assess Van Patten's claim. *Deppisch*, 434 F.3d at 1042.

¶ 23. The Seventh Circuit reversed the district court's decision, concluding the Wisconsin Court of Appeals erred by applying *Strickland*. *Deppisch*, 434 F.3d at 1043. The court explained:

> In this case, although the transcript shows that the state trial judge did his best to conduct the plea colloquy with care, the arrangements made it impossible for Van Patten to have the "assistance of counsel" in anything but the most perfunctory sense. Van Patten stood alone before judge and prosecutor. Unlike the usual defendant in a criminal case, he could not turn to his lawyer for private legal advice, to clear up misunderstandings, to seek reassurance, or to discuss any last-minute misgivings. Listening over an audio

388

connection, counsel could not detect and respond to cues from his client's demeanor that might have indicated he did not understand certain aspects of the proceeding, or that he was changing his mind. If Van Patten wished to converse with his attorney, anyone else in the courtroom could effectively eavesdrop. (We assume the district attorney would balk if he were expected to conduct last-minute consultations with his staff via speakerphone in open court, "on the record," with the defendant taking in every word.) No advance arrangements had been made for a private line in a private place, and even if one could "perhaps" have been provided, it would have required a special request by Van Patten and, apparently, a break in the proceedings. In short, this was not an auspicious setting for someone about to waive very valuable constitutional rights.

*Id.* The court further concluded that, because the physical absence of counsel from a plea hearing is a "structural defect," it is not subject to a harmless error analysis. *Id.* at 1046.

¶ 24. The Seventh Circuit's decision in *Deppisch* supports Anderson's argument that his physical separation from his attorney during his plea hearing was tantamount to a complete denial of the right to counsel and should therefore be analyzed under *Cronic*, rather than *Strickland*. However, *Deppisch* was not the last word on the subject. After the Seventh Circuit issued its decision in *Deppisch*, the United States Supreme Court granted certiorari, vacated the Seventh Circuit's decision, and remanded the matter for further consideration in light of *Carey v. Musladin*, 549 U.S. 70 (2006). *See Schmidt*, 549 U.S. at 1163. On remand, the Seventh Circuit adhered to its original decision. *See Van Patten*, 489 F.3d at 828.

389

¶ 25. Thereafter, the Supreme Court again granted certiorari and reversed the Seventh Circuit. *See Wright*, 552 U.S. at 121. The Court stated none of its prior decisions clearly held "that counsel's participation by speakerphone should be treated as a 'complete denial of counsel,' on par with total absence." *Id.* at 125. Thus, the Court's prior decisions did not "clearly establish[] that *Cronic* should replace *Strickland* in this novel factual context." *Id.* The Court explained:

> Even if we agree with Van Patten that a lawyer physically present will tend to perform better than one on the phone, it does not necessarily follow that mere telephone contact amounted to total absence or "prevented [counsel] from assisting the accused," so as to entail application of *Cronic*. The question is not whether counsel in those circumstances will perform less well than he otherwise would, but whether the circumstances are likely to result in such poor performance that an inquiry into its effects would not be worth the time. Our cases provide no categorical answer to this question, and for that matter the several proceedings in this case hardly point toward one. The Wisconsin Court of Appeals held counsel's performance by speakerphone to be constitutionally effective; neither the Magistrate Judge, the District Court, nor the Seventh Circuit disputed this conclusion; and the Seventh Circuit itself stated that "[u]nder *Strickland*, it seems clear Van Patten would have no viable claim," *Deppisch, supra,* at 1042.

*Wright*, 552 U.S. at 125 (internal citation omitted). Because prior case law provided no clear answer to the question presented, the Supreme Court stated it could not be said that the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it analyzed Van Patten's claim under *Strickland*. *Wright*,

552 U.S. at 126. Accordingly, the Court held that Van Patten was not entitled to habeas relief under 28 U.S.C. § 2254(d)(a). *Wright*, 552 U.S. at 126.

■

¶ 26. As the preceding summary shows, *Deppisch*—the sole case on which Anderson relies in support of his argument that his physical separation from his attorney during his plea hearing was tantamount to a complete denial of counsel under *Cronic*—was reversed and is no longer good law. Although the Supreme Court in *Wright* declined to resolve whether the circumstances presented in that case amounted to a complete denial of counsel, the Court indicated the Wisconsin Court of Appeals did not unreasonably apply clearly established federal law by analyzing Van Patten's Sixth Amendment claim under *Strickland*. *Wright*, 552 U.S. at 126. Anderson does not cite any state or federal case since *Wright* that has held that a physical separation between a defendant and his or her attorney during a plea hearing, absent more, should be analyzed as a complete denial of the right to counsel under *Cronic*. Under these circumstances, we decline to so hold as a matter of first impression. We instead conclude Anderson's claim that his physical separation from his attorney during his plea hearing violated his right to the effective assistance of counsel should be analyzed under *Strickland*.

■

¶ 27. As noted above, in order to prevail on an ineffective assistance claim under *Strickland*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Anderson does not develop any argument on appeal that his trial attorney was ineffective under this standard. For in-

391

stance, although Anderson asserts his trial attorney was deficient in failing to have been in the same room with him during the plea hearing and cites several reasons why, as a general matter, it is inadvisable for a criminal defendant to be physically separated from his or her attorney during a plea hearing, he does not point to any specific examples of deficient performance by his trial attorney during the plea hearing in this case. In addition, "[t]o establish prejudice in the context of a postconviction motion to withdraw a guilty plea based upon ineffective assistance of counsel, the defendant must allege that 'but for the counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.' " *State v. Burton*, 2013 WI 61, ¶ 50, 349 Wis. 2d 1, 832 N.W.2d 611 (quoting *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996)). Anderson does not assert he would not have pled guilty if his trial attorney had been in the same room with him during the plea hearing, or if counsel had done anything else differently during the hearing.

■

¶ 28. We will not abandon our neutrality to develop arguments for the parties. *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82. Because Anderson has failed to develop an argument that his trial attorney was ineffective under *Strickland*, we reject his claim that his right to the effective assistance of counsel was violated during his plea hearing.

## II. Anderson's right to be present at the plea hearing

¶ 29. On appeal, it is undisputed that Anderson had a statutory right to be physically present in the

courtroom for his plea hearing.[4] WISCONSIN STAT. § 971.04 provides, in relevant part:

> (1) Except as provided in subs. (2) and (3), the defendant shall be present:
>
> (a) At the arraignment;
>
> (b) At trial;
>
> (c) During voir dire of the trial jury;
>
> (d) At any evidentiary hearing;
>
> (e) At any view by the jury;
>
> (f) When the jury returns its verdict;
>
> (g) At the pronouncement of judgment and the imposition of sentence;
>
> (h) At any other proceeding when ordered by the court.

While plea hearings are not expressly mentioned in § 971.04(1), in *State v. Soto*, 2012 WI 93, ¶¶ 17–18, 343 Wis. 2d 43, 817 N.W.2d 848, our supreme court held that para. (1)(g) applies to a plea hearing, like the one in this case, during which the defendant enters a plea and the circuit court pronounces judgment in regard to the crime to which the defendant pled.[5] The

---

[4] Anderson also asserts he had a constitutional due process right to be present in the courtroom during the plea hearing. However, he does not develop any argument that the analysis regarding that alleged constitutional right differs in any way from the analysis of the statutory right to be present. We decline to develop a separate constitutional argument for Anderson. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82.

[5] In *State v. Soto*, 2012 WI 93, ¶ 17, 343 Wis. 2d 43, 817 N.W.2d 848, the circuit court accepted the defendant's guilty

supreme court also held in *Soto* that the right to be "present" under § 971.04 means that a defendant has a right to be physically present in the same courtroom as the presiding judge. *Soto*, 343 Wis. 2d 43, ¶ 27. Thus, pursuant to § 971.04 and *Soto*, Anderson had a statutory right to be present in person for his plea hearing, in the same courtroom as the presiding judge.

¶ 30. The disputed issue on appeal is whether Anderson waived his right to be present in the same courtroom as the presiding judge by agreeing to proceed with the plea hearing by telephone. The *Soto* court held that the right to be present in the courtroom during a plea hearing may be waived. *See Soto*, 343 Wis. 2d 43, ¶ 35. Waiver is "the intentional relinquishment or abandonment of a known right." *Id.* (quoting *State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612). "[W]hether a defendant's undisputed statements and actions in a criminal proceeding constitute waiver of a statutory right is a question of law for our independent review." *Id.*, ¶ 14.

¶ 31. In order to address whether Anderson validly waived his right to be present at his plea hearing, we first discuss the standard for waiver set forth in *Soto*. We then explain why we conclude a higher standard applies under the specific circumstances of this

plea, found him guilty, and stated, "I adjudge him convicted on this date, and I order a Judgment of Conviction entered in the record." On these facts, our supreme court concluded the court had pronounced judgment during the plea hearing. The court observed, "It may be possible to have a plea accepted, but not have the court pronounce judgment. As these are not the facts before us, we do not address this potential further." *Id.*, ¶ 18 n.5. In this case, it is undisputed the circuit court pronounced judgment during Anderson's plea hearing.

case. Ultimately, we conclude that, under either the higher standard applicable to this case or the standard set forth in *Soto*, Anderson has demonstrated the circuit court's waiver colloquy was inadequate. We then explain that, because Anderson has made a prima facie showing that the colloquy was inadequate, a remand is necessary for a new evidentiary hearing, at which the State will have the burden to prove by clear and convincing evidence that Anderson did, in fact, knowingly, voluntarily, and intelligently waive his right to be present at the plea hearing. Finally, we reject the State's argument that any error regarding the violation of Anderson's right to be present at his plea hearing was harmless.

> A. *Soto sets forth two requirements a circuit court must fulfill in order to obtain a valid waiver of the defendant's right to be present at his or her plea hearing, when it is proposed that the hearing be conducted via videoconferencing.*

¶ 32. In *Soto*, the defendant's plea hearing was conducted via videoconferencing. *Id.*, ¶ 6. Soto, his attorney, and the prosecutor were present in a courtroom in Trempealeau County, while the judge was present in a courtroom in Jackson County. *Id.* At the beginning of the plea hearing, the judge asked whether those in the Trempealeau County courtroom could see and hear him to their satisfaction, to which the defendant and his attorney both answered, "Yes." *Id.*, ¶¶ 7, 47. The following exchange then took place:

> THE COURT: All right. [Defense counsel], are you satisfied with appearing at this plea hearing by video teleconferencing?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: And, Mr. Soto, is it all right with you that we are doing this plea hearing by video teleconferencing?

THE DEFENDANT: Yes, sir.

*Id.*, ¶ 47. After a lengthy plea colloquy, the judge asked Soto whether he still wished to plead guilty, and Soto responded affirmatively. *Id.* The judge then asked whether there was anything Soto did not understand "about what's happening" and whether he wished to ask the court or his attorney any questions. *Id.* Soto responded, "No." *Id.*

¶ 33. On this record, our supreme court concluded Soto had waived his statutory right to be physically present at his plea hearing in the same courtroom as the presiding judge. *Id.*, ¶ 48. The court set forth two requirements that must be met in order to ensure a valid waiver "[w]hen videoconferencing is proposed for a plea hearing at which it is anticipated judgment will be pronounced." *Id.*, ¶ 46. First, the circuit court "should enter into a colloquy with the defendant that explores the effectiveness of the videoconferencing then being employed." *Id.* Specifically, the court, "shall ascertain whether the defendant and his attorney, if represented by counsel, are able to see, speak to and hear the judge and that the judge can see, speak to and hear the defendant and counsel." *Id.* Second, the court "shall ascertain, either by personal colloquy or by some other means, whether the defendant knowingly, intelligently, and voluntarily consents to the use of videoconferencing. In so doing, questions should be asked to suggest to the defendant that he has the option of refusing to employ videoconferencing[.]" *Id.*

¶ 34. The supreme court concluded these requirements were met in Soto's case. It noted the circuit court's colloquy was sufficient to demonstrate that the

videoconferencing was functioning properly, in that Soto and his attorney could see, speak to, and hear the judge, and the judge could see, speak to, and hear them. *Id.*, ¶ 48. The supreme court further stated the circuit court

> ascertained that Soto was knowingly, intelligently, and voluntarily agreeing to the use of videoconferencing for the plea hearing. [The circuit court] asked Soto and his attorney whether proceeding via videoconferencing was acceptable, and each responded affirmatively. [The court's] questions indicated that Soto did not have to agree to the use of videoconferencing, and the plea colloquy proceeded as it would have if all the parties and the judge were in the same courtroom. After [the court] ascertained that Soto was making a knowing, intelligent, and voluntary plea, [it] offered Soto yet another opportunity to object to the use of videoconferencing. [The court] proceeded correctly.

*Id.*, ¶ 49.

¶ 35. Notably, the *Soto* court limited its analysis to the adequacy of the circuit court's waiver colloquy. Unlike the dissenting opinion, the majority of the court was untroubled by the fact that there was no postconviction evidentiary hearing regarding the validity of Soto's waiver, at which Soto could have testified regarding whether he understood at the time of the waiver that he had a right to be present at his plea hearing in the same courtroom as the presiding judge. *See id.*, ¶¶ 77–78 (Abrahamson, C.J., dissenting).

B. *Anderson's case is materially distinguishable from Soto; under the circumstances presented here, more was required in order to ensure a valid waiver of Anderson's right to be present at his plea hearing.*

¶ 36. As the preceding summary shows, *Soto* sets forth a fairly low standard that must be met for a

defendant's waiver of the right to be present at his or her plea hearing to be considered knowing, intelligent, and voluntary. Under *Soto*, the circuit court need not expressly inform the defendant that he or she has a right to be present in person at the hearing, nor is evidence required that the defendant was informed of that right by another source. Instead, the *Soto* court stated it is sufficient that a circuit court's questions "*suggest* to the defendant that he has the option of refusing to employ videoconferencing[.]" *Id.*, ¶ 46 (emphasis added).

¶ 37. Anderson argues that *Soto* is factually distinguishable, and, under the facts of this case, the circuit court was required to do more in order to ensure a valid waiver of his right to be present at his plea hearing. The State does not respond to this argument.

¶ 38. We agree that Anderson's case is distinguishable from *Soto* in three important respects. First, the defendant in *Soto* was present in a courtroom for his plea hearing, just not the same courtroom as the presiding judge. In contrast, Anderson remained in prison during his plea hearing. The *Soto* court explained that WIS. STAT. § 971.04's requirement that defendants be present in courtrooms for certain proceedings "is guided by the belief that a courtroom is a setting epitomizing and guaranteeing 'calmness and solemnity,' . . . so that a defendant may recognize that he has had access to the judicial process in a criminal proceeding." *Soto*, 343 Wis. 2d 43, ¶ 23 (quoting *Cox v. Louisiana*, 379 U.S. 536, 583 (1965) (Black, J., dissenting)). The *Soto* court further stated that requiring the defendant to make his or her appearance in the courtroom "avoids the potential or perceived problems that can occur when the defendant is located in another facility such as a jail, while the judge, prosecutor, and

perhaps even defense counsel are in the courtroom."
*Id.* (citing Anne Bowen Poulin, *Criminal Justice and Videoconferencing Technology: The Remote Defendant,* 78 Tul. L. Rev. 1089 (2004)).

¶ 39. Second, the defendant in *Soto* was in the same room as his attorney during the plea hearing. He was therefore able to communicate easily with counsel during the hearing. Although the *Soto* court mentioned the "potential or perceived problems" inherent in a defendant's appearance from a location other than a courtroom, including the absence of counsel's physical presence, it was not necessary for the court to explore those matters. *See id.* Conversely, Anderson was in prison during his plea hearing, while his attorney was in a Shawano County courtroom along with the prosecutor and judge, thereby raising the same concerns expressed by the *Deppisch* court above. *See supra* ¶ 23. Counsel had no ability to observe Anderson during the plea colloquy and thereby detect any non-verbal cues indicating Anderson had a question or concern.

¶ 40. Third, *Soto* involved videoconferencing. As a result, the judge could both see and hear the other participants, even though he was not in the same room with them. The *Soto* court did not discuss the use of "technology" broadly. Instead, it specifically addressed what is necessary for a valid waiver when videoconferencing is used. *Id.,* ¶¶ 46, 48–49.

¶ 41. Here, however, Anderson appeared at the plea hearing by telephone; obviously, he could not see the other participants, and they could not see him. Again, this prevented the judge and counsel from observing non-verbal cues during the hearing, including during the exchanges relevant to a determination of whether a valid waiver of the right to be present

399

occurred. In addition, when a hearing is conducted by videoconferencing, the ability to see the other participants provides an ongoing indicator that the technology is functioning correctly—if the audio cuts out, for instance, the other participants will be alerted to that fact because they will be able to see the defendant's mouth moving without hearing what he or she is saying. Conversely, if the audio malfunctions during a hearing conducted by telephone, a court and other participants could have no idea there is a problem because they have little way of knowing anyone is speaking in the first place.

¶ 42. In short, while *Soto* describes what a circuit court should do to establish a valid waiver of the defendant's right to be present at his or her plea hearing when the defendant appears by videoconferencing or similar technology, is in a courtroom, and is in the same room as his or her attorney, we conclude more is required when, as in Anderson's case, the defendant appears by telephone, from prison, and is physically separated from counsel. Under these circumstances, we hold that a valid waiver of the defendant's right to be present must be predicated upon a colloquy that unambiguously informs the defendant he or she has a right to be physically present for the plea hearing in the same courtroom as the presiding judge. In addition, the court must specifically inquire, as often and in whatever manner necessary under the circumstances, whether the defendant is able to hear and understand the court and the other participants.

¶ 43. The record on appeal clearly shows that the circuit court's colloquy in the instant case clearly fell short of these requirements. The court never plainly informed Anderson he had a right to be physically

present in the courtroom for his plea hearing, nor did the court inquire, at any point during the hearing, whether Anderson could hear and understand the court and the other participants. Anderson has therefore demonstrated that, under the specific facts of this case, the circuit court's waiver colloquy was insufficient.

C. *Even assuming the waiver colloquy in this case should be measured against the standards set forth in Soto, Anderson has demonstrated the colloquy was inadequate.*

¶ 44. In the alternative, even assuming *Soto* sets forth the correct standard to assess the sufficiency of the waiver colloquy that was conducted in this case, we nevertheless conclude Anderson has demonstrated the colloquy was inadequate. Although *Soto* sets a low bar, even its minimal requirements were not met in Anderson's case.

¶ 45. The waiver colloquy undertaken by the circuit court regarding Anderson's appearance by telephone was more ambiguous than the colloquy in *Soto*. In *Soto*, the circuit court asked the defendant, "[I]s it all right with you that we are doing this plea hearing by video teleconferencing?" *Id.*, ¶ 47. According to our supreme court, that question was sufficient to convey to Soto that he did not have to agree to the use of videoconferencing. *Id.*, ¶ 49. Here, in contrast, the circuit court told Anderson he "can be present in person for different things." That phrase could have been reasonably interpreted to mean Anderson had a right to be present for *different* things—for instance, trial or sentencing—but not for *this* "thing"—that is, the plea hearing.

401

¶ 46. After the circuit court told Anderson he could be present in person for "different things," it asked whether it was "okay that we do this by phone today," and Anderson responded in the affirmative. However, the court then proceeded to explain that it had attempted, but failed, to secure Anderson's presence at the plea hearing "by internet," which would have given Anderson "the ability to see us and vice versa." As noted by the concurrence, like in *Soto*, the court's question "Is it okay that we do this by phone today?" suggested Anderson had the option of refusing to employ the use of the telephone for the plea hearing. *See* Concurrence, ¶ 4 & n.2. But that does not end the inquiry. In *Soto*, the only other option available to be employed was an in-person appearance. In the instant case, the court's colloquy could have been reasonably understood to mean that Anderson had two options for his appearance at the plea hearing: appearing by telephone, or appearing by videoconferencing via the internet. The colloquy did not convey to Anderson, either expressly or by implication, that an in-person appearance was an option.

¶ 47. Furthermore, following the plea colloquy, the circuit court informed Anderson it would be possible to secure his presence in the courtroom for the upcoming sentencing hearing, if he so desired. Based on that statement, Anderson could have reasonably inferred that, *unlike the plea hearing,* he had a right to be present in person for his sentencing hearing.

¶ 48. Moreover, *Soto* requires a circuit court to "enter into a colloquy with the defendant that explores the effectiveness of the [technology] then being employed." *Id.*, ¶ 46. "In that regard, the judge *shall ascertain*" whether the defendant, his or her attorney, and the court are able to "see, speak to and hear" one

402

another. *Id.* (emphasis added). In *Soto*, this requirement was satisfied when the circuit court asked, "Can everyone hear me all right there? . . . And can everyone see me all right?" and both attorneys responded in the affirmative. *Id.*, ¶¶ 47–48.

¶ 49. The circuit court in this case did not ask any similar questions during the plea hearing designed to determine whether Anderson could hear and understand what was being said by the court, the prosecutor, and Anderson's own attorney. Anderson appeared to respond appropriately to other questions posed by the court and the prosecutor during the hearing. However, *Soto* specifically requires a court to "enter into a colloquy" with the defendant exploring the effectiveness of the technology being employed. *See id.*, ¶ 46. That requirement would be superfluous if a court could simply infer the technology was functioning effectively based on the fact that the defendant seemed to respond appropriately to other questions asked during the hearing.

¶ 50. In summary, Anderson has demonstrated the circuit court's waiver colloquy in this case failed to meet the minimal requirements set forth in *Soto* in two respects. First, the court did not ascertain whether Anderson knowingly, intelligently, and voluntarily consented to appearing by telephone, in that it neither expressly informed him he had the right to appear in person nor asked questions suggesting he had the option to demand an in-person appearance. *See id.* Second, the court failed to conduct a colloquy exploring the effectiveness of the telephonic technology being employed. *See id.*

D. *A remand is necessary for a new evidentiary hearing, at which the State will have the burden to prove by clear and convincing evidence that Anderson did in fact knowingly, voluntarily, and intelligently waive his right to be present at the plea hearing.*

¶ 51. Anderson has demonstrated the circuit court's waiver colloquy was inadequate, under either *Soto* or the higher standard we have concluded is applicable under the specific facts of this case. However, by analogy to *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and guided by our supreme court's analysis in *Soto*, we conclude that showing does not end the inquiry.

¶ 52. A *Bangert* motion for plea withdrawal is "based on defects in the plea colloquy." *State v. Hoppe*, 2009 WI 41, ¶ 3, 317 Wis. 2d 161, 765 N.W.2d 794.[6] For purposes of a *Bangert* motion, "The initial burden rests with the defendant to make a prima facie showing that his [or her] plea was accepted without the trial court's conformance with [WIS. STAT.] § 971.08 or other mandatory procedures[.]" *Bangert*, 131 Wis. 2d at 274. The defendant must also allege he or she did not know or understand the information that should have been provided during the plea hearing. *Id.* If a defendant's motion fails to meet these requirements, the circuit court may deny it without an evidentiary hearing. *State v. Howell*, 2007 WI 75, ¶ 27, 301 Wis. 2d 350, 734

---

[6] Conversely, a *Nelson/Bentley* motion for plea withdrawal is generally based on factors extrinsic to the plea colloquy. *See State v. Hoppe*, 2009 WI 41, ¶ 3, 317 Wis. 2d 161, 765 N.W.2d 794; *see also Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972); *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

N.W.2d 48. However, if the defendant's motion does meet these requirements, the burden shifts to the State to establish by clear and convincing evidence at an evidentiary hearing that the defendant's plea was knowing, intelligent, and voluntary, despite any defects in the plea colloquy. *State v. Hoppe*, 2009 WI 41, ¶ 44, 317 Wis. 2d 161, 765 N.W.2d 794.

¶ 53. We conclude a similar procedure should apply in a case in which a defendant asserts he or she did not validly waive his or her right to be present at a plea hearing. That is, once a defendant has shown that the circuit court's waiver colloquy was deficient and has asserted, as Anderson does here, that he or she did not understand he or she had a right to appear in person at the plea hearing, the burden should shift to the State to prove by clear and convincing evidence that the defendant did, in fact, knowingly, voluntarily, and intelligently waive his or her right to be present.

¶ 54. Employing a *Bangert*-type procedure to assess a defendant's claim that he or she did not validly waive his or her right to be present at a plea hearing is consistent with the procedure employed in *Soto*. The *Soto* court concluded the circuit court's colloquy regarding the waiver of Soto's right to be present at his plea hearing was adequate. *Soto*, 343 Wis. 2d 43, ¶¶ 48–49. Accordingly, the court did not delve into the question of whether Soto actually understood that he had a right to be present for his plea hearing in the same courtroom as the presiding judge, nor did the court conclude a remand was necessary for a postconviction evidentiary hearing to address that issue. Instead, consistent with the procedure used to analyze *Bangert* motions, the court simply concluded that, because the record showed the waiver colloquy con-

405

ducted by the circuit court was adequate, Soto could not establish that his waiver of the right to be present at his plea hearing was invalid.[7]

¶ 55. Here, unlike in *Soto*, we have concluded the circuit court's waiver colloquy was inadequate. In addition, Anderson has affirmatively alleged he did not know the information that should have been provided during the colloquy. Under these circumstances, the burden should shift to the State to prove by clear and convincing evidence at an evidentiary hearing that Anderson did in fact knowingly, intelligently, and voluntarily waive his right to be present. Although the circuit court has already held an evidentiary hearing on Anderson's postconviction motion, the court placed the burden on Anderson during that hearing to demonstrate that he did not validly waive his right to be present at his plea hearing. Because the burden has shifted to the State to prove that Anderson's waiver was knowing, intelligent, and voluntary, a remand is required for a new postconviction evidentiary hearing.

E. *The State has failed to establish that any error regarding the violation of Anderson's right to be present at his plea hearing was harmless as a matter of law.*

¶ 56. A remand would be unnecessary if, as the State asserts, any error regarding the violation of Anderson's right to be present at his plea hearing was

---

[7] Soto did not argue any factors extrinsic to the waiver colloquy—for example, that his comprehension was inhibited by medications he was taking—rendered his waiver of the right to be present at his plea hearing invalid. *See Soto*, 343 Wis. 2d 43, ¶ 11. Anderson likewise fails to assert that any extrinsic factors rendered his waiver invalid.

harmless as a matter of law. In response to the State's argument, Anderson asserts it is "not clear that the harmless error rule applies to the violation of a defendant's right to be present at his plea hearing." (Capitalization omitted.) However, we need not resolve the parties' dispute regarding whether the harmless error rule applies under these circumstances. Assuming without deciding that the harmless error rule applies, we nevertheless conclude the State has failed to demonstrate, beyond a reasonable doubt, that the error in this case was harmless. *See State v. Martin*, 2012 WI 96, ¶ 45, 343 Wis. 2d 278, 816 N.W.2d 270 (burden is on the party who benefited from an error to demonstrate beyond a reasonable doubt the error was harmless).

¶ 57. The State argues the violation of Anderson's right to be present at his plea hearing was harmless because it is clear beyond a reasonable doubt Anderson would have pled guilty even if he had appeared in person. In support of this argument, the State notes that Anderson "reaffirmed" his guilty plea at the sentencing hearing while present in the courtroom with his attorney. This argument, however, ignores Anderson's testimony at the postconviction hearing that he asked his attorney about withdrawing his plea three times prior to sentencing. Anderson testified that, in response to these inquiries, he was referred to another attorney, who informed him it would be "extremely hard" to withdraw his plea and he "got a really good deal and . . . should just take it."[8] Anderson was

_____

[8] In actuality, it would likely have been easier for Anderson to withdraw his plea before sentencing than after sentencing. *See State v. LeMere*, 2016 WI 41, ¶ 22, 368 Wis. 2d 624, 879 N.W.2d 580 (Before sentencing, a circuit court should freely allow a defendant to withdraw his or her plea for any fair and

not informed there was any legal basis to withdraw his plea. Anderson further testified he did not tell the circuit court during sentencing that he wanted to withdraw his plea because he "thought it was too late."

¶ 58. Anderson's postconviction hearing testimony suggests that, had Anderson been made aware there was a basis to request plea withdrawal prior to sentencing—namely, the violation of his right to be present at the plea hearing—he would not have reaffirmed his plea during the sentencing hearing and would have instead moved to withdraw it. Moreover, the record shows that Anderson's ability to communicate with his attorney during the plea hearing was limited, in that they could not see each other and had no ability to communicate privately while the hearing was in progress. In addition, it is undisputed Anderson did not complete a plea questionnaire and waiver of rights form until after the circuit court accepted his plea. It is therefore not clear beyond a reasonable doubt that the violation of Anderson's right to be present at the plea hearing was harmless.

¶ 59. For the reasons stated above, we reverse the order denying Anderson's postconviction motion for plea withdrawal. We remand for a new postconviction evidentiary hearing, at which the State will have the burden to prove, by clear and convincing evidence, that Anderson knowingly, intelligently, and voluntarily waived his right to be present at his plea hearing.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

just reason, unless the prosecution would be substantially prejudiced; after sentencing, the defendant must prove by clear and convincing evidence that plea withdrawal is necessary to correct a manifest injustice.).

¶ 60. HRUZ, J. (*concurring*). The majority of the court and I agree on many matters in this case. I agree with the majority's conclusion that Anderson's right to counsel was not violated during the plea hearing. *See* Majority, ¶¶ 16–28. I also agree Anderson had a statutory right to be physically present at his plea hearing, *see* Majority, ¶ 29 (citing WIS. STAT. § 971.04 (2015–16)), and that *State v. Soto*, 2012 WI 93, 343 Wis. 2d 43, 817 N.W.2d 848, establishes a defendant may affirmatively waive this right, *see* Majority, ¶ 30 (citing *Soto*, 343 Wis. 2d 43, ¶ 35); *see also Soto*, 343 Wis. 2d 43, ¶¶ 40, 44.

¶ 61. I also agree with the majority that the facts of this case are so materially different than those in *Soto* that the waiver colloquy standards set forth in that decision do not control our disposition here. *See* Majority, ¶¶ 37–38. The majority ably explains why only an unambiguous waiver colloquy suffices in instances where the defendant appears by telephone and is not physically present with his or her attorney, nor in any courtroom—indeed, Anderson was in prison while appearing by telephone. *See* Majority, ¶¶ 37–41. Under the circumstances of this case, I ultimately endorse the majority's conclusion that Anderson is entitled to a new evidentiary hearing at which the State bears the burden of showing, by clear and convincing evidence, that his waiver of his right to be present during his plea colloquy was made knowingly, voluntarily and intelligently. *See* Majority, ¶¶ 51–55.

¶ 62. I therefore join the majority opinion except as to Part II.C., wherein the majority concludes that the colloquy in this case was insufficient even under the standards set forth in *Soto*. *See* Majority,

409

¶¶ 44–50.[1] I part ways with the majority in its conclusion that the waiver colloquy in this case was "more ambiguous than the colloquy in *Soto*" or was otherwise deficient under *Soto*'s directives, were they to apply to the circumstances in this case. *See* Majority, ¶ 45. The colloquy the supreme court found sufficient in *Soto*, like the colloquy in this case, did not expressly advise the defendant that he had a right to be present in person for the plea hearing. *See Soto*, 343 Wis. 2d 43, ¶ 47. Rather, the aspects of the colloquy the *Soto* court deemed important were: (1) the court's acknowledgement of the use of videoconferencing; (2) the defendant's counsel's representation in response to the court's questioning that "everyone" on the other end of the videoconference could see and hear the judge; (3) acknowledgment by both the defendant and his counsel that their appearance by videoconferencing was acceptable; and (4) the court's "catch all" request at the end of the colloquy as to whether there was any matter the defendant did not understand or on which he wished to confer with his attorney. *Id.*

¶ 63. *Soto* establishes a low bar indeed, one that the colloquy in this case satisfied. At the outset of the plea hearing, the circuit court acknowledged that Anderson was appearing by telephone and that an appearance by Internet videoconferencing was not feasible that day. The court asked, and Anderson agreed, that it was "okay" to proceed by phone. The prosecutor verified that Anderson was in fact on the phone. Before accepting Anderson's plea, the court asked whether Anderson had any questions. Anderson responded in

---

[1] To the extent other parts of the majority opinion also state the colloquy in this case was insufficient under the standards set forth in *State v. Soto*, 2012 WI 93, 343 Wis. 2d 43, 817 N.W.2d 848, I also do not join those statements.

the negative. The court offered to vacate the courtroom if Anderson wished to speak alone with his attorney or discuss anything else. Anderson twice declined this invitation. The totality of the waiver colloquy in this case, including the court's statement at its outset that Anderson "can be present in person for different things," was sufficient to "indicate" and "suggest to the defendant that he ha[d] the option of refusing" to appear by telephone for a plea hearing at which judgment would be pronounced. *See Soto*, 343 Wis. 2d 43, ¶¶ 46, 49.[2]

¶ 64. The only arguable deficiency I can identify in this colloquy, at least as compared with the colloquy in *Soto*, is the circuit court's failure to specifically ask Anderson whether he could hear "everyone" on the other end of the phone (i.e., the judge, the prosecutor,

---

[2] Anderson had an additional opportunity to insist on a personal appearance or object to his appearance by telephone. At the conclusion of the plea hearing, the prosecutor asked Anderson whether it was "okay . . . that we do this plea over the telephone?" Anderson again responded in the affirmative.

The majority agrees that repeated questioning of this nature "suggested Anderson had the option of refusing to employ the use of the telephone for the plea hearing." Majority, ¶ 46. However, the majority reasons that this was insufficient to adequately apprise Anderson of his right to be present in person because it was possible Anderson could have reasonably understood the question to be whether he instead preferred to appear by Internet videoconferencing. *Id.* I disagree. The colloquy in this case is more suggestive of a right to appear in person than that in *Soto* because the circuit court expressly informed Anderson he had a right to be present in person for "different things" immediately before asking whether it was acceptable to proceed by phone. In *Soto*, the circuit court had apparently not mentioned the defendant's right to be present at all, including for any "things." *See State v. Soto*, 2012 WI 93, ¶ 47, 343 Wis. 2d 43, 817 N.W.2d 848.

and his attorney). *See Soto*, 343 Wis. 2d 43, ¶ 47; *see also* Majority, ¶ 48. However, this question itself was of less significance to the *Soto* court than the fact that the colloquy "demonstrated that the videoconferencing [technology in that case] was functioning properly." *Soto*, 343 Wis. 2d 43, ¶ 48. The waiver colloquy in this case demonstrated that Anderson could hear the judge and the attorneys on the other end of the phone call, as he responded with appropriate answers, and at appropriate times, to questions posed to him. Moreover, during the actual plea colloquy, Anderson responded reasonably to all questions and answered affirmatively that he could understand what the circuit court was saying. At one point after the circuit court accepted his plea, Anderson asked the prosecutor to repeat a question he apparently did not hear. His doing so suggested both that the telephone equipment was otherwise functioning properly and that Anderson was able and willing to speak up if he did not hear well something being said.

¶ 65. For the foregoing reasons, I respectfully concur.