**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 2, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1424-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF1098

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CHARLES WILLIAMS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: DONALD R. ZUIDMULDER, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1     GILL, J.   Charles Williams appeals from a judgment of conviction, entered upon his no-contest plea, to one count of second-degree sexual assault of a child. He also appeals from a circuit court order denying his postconviction motion to withdraw his plea. On appeal, Williams argues that the court erred by

denying his plea withdrawal motion because he did not knowingly, intelligently, and voluntarily waive his right, pursuant to WIS. STAT. § 971.04(1)(g) (2023-24),[1] to appear in person at the plea hearing.

¶2    Given the particular facts of this case, we assume without deciding that Williams did not validly waive his statutory right to be present in the courtroom for his plea hearing. We conclude, however, that the harmless error rule applies to the assumed violation of Williams' statutory right to be present at his plea hearing and that any error regarding that right was harmless. We affirm.

## BACKGROUND

¶3    The State charged Williams in July 2020 with two counts of second-degree sexual assault of a child. Following Williams' initial appearance, the circuit court ordered a competency evaluation. In April 2021, the court deemed Williams incompetent to proceed to trial, but it found that he would likely become competent within the relevant statutory time period. *See* WIS. STAT. § 971.14(5)(a)1. Approximately five months later, the court found that Williams had regained competency, and the criminal proceedings resumed.

¶4    Williams appeared in person at his preliminary hearing on October 21, 2021. During the hearing, the circuit court asked defense counsel if Williams was "okay doing" the arraignment by Zoom.[2] Defense counsel responded, "Zoom, please." The court then requested that defense counsel file a

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Zoom is an internet-based live audiovisual conferencing platform. *See generally* WIS. STAT. § 967.08.

"Waiver of Right to Personal Appearance" form with the court. Shortly thereafter, defense counsel submitted the form. The form included a checked box next to the statement: "I give up my right to be physically present at all future proceedings." The form further provided that Williams "authorized [his] attorney to sign [the form] for [him]." (Formatting altered.)

¶5 Williams appeared at his arraignment via Zoom from jail. Defense counsel informed the circuit court that the defense was in the process of assessing its options for seeking a not guilty by reason of mental disease or defect (NGI) plea. The circuit court entered an NGI plea on the record, and it scheduled dates for a status conference, a final pretrial, and a jury trial. Defense counsel noted that he might have to appear in person for the status conference but inquired if Williams could still appear by Zoom, and the court permitted him to do so.

¶6 Prior to the status conference, defense counsel filed a completed "Plea Questionnaire/Waiver of Rights" form with the circuit court. The form indicated that Williams would plead no contest to one count of second-degree sexual assault of a child (Count 2). In exchange, the State agreed to recommend that the court dismiss and read in the remaining count (Count 1) and to "cap" its sentencing recommendation at ten years of initial confinement followed by ten years of extended supervision. The form was signed by defense counsel on Williams' behalf on January 3, 2022.

¶7 Williams appeared by Zoom at the status conference on January 10, 2022. Defense counsel placed the plea offer on the record. Defense counsel further noted that Williams' signed "Waiver of Right to Personal Appearance" form was "in the file as document number 51." The circuit court asked Williams whether it was correct that he had "previously indicated" that he was waiving his

3

right of personal appearance. Williams affirmed that the court was correct. Afterward, the court asked Williams how he pled to Count 2, to which Williams responded, "Not guilty." The court thereafter concluded the hearing and left the final pretrial conference and the jury trial dates on the calendar.

¶8 On March 4, 2022, defense counsel wrote the circuit court requesting that the court "set this matter for a Plea Hearing prior to the commencement of the Jury Trial set for … March 9, 2022." Before the scheduled plea hearing, defense counsel moved to withdraw due to a breakdown in the "attorney/client relationship."

¶9 At a status conference on March 22, 2022, Williams, who again appeared by Zoom, expressed to the circuit court that he wanted defense counsel to withdraw because "I wanted to take the plea bargain that they offered me. They said I can take a plea. I wanted to plead. I wanted to take the plea." Defense counsel stated that he was concerned that he and Williams were not communicating well because "this would now be the third time that Mr. Williams has said he wants to proceed under the plea offer and he's changed course twice to say he wanted to go to trial.… I don't know what's going on."

¶10 Defense counsel agreed with the circuit court that the best way to proceed would be for the court to order Williams' personal appearance at a hearing so that counsel could confer with Williams, and if Williams wanted to accept the plea, the parties could proceed to a plea hearing immediately afterward. The court set a hearing for two days later, and it ordered that Williams be transported to the courtroom from the jail.

¶11 Accordingly, Williams appeared in person with defense counsel on March 24, 2022. Defense counsel apprised the circuit court that he met with

Williams the day before and that counsel was "very concerned" that Williams did not know what he was charged with, the elements of the charges, the potential penalties if convicted, or the substance of the plea offer. Defense counsel further stated that Williams told him that morning that he wanted to proceed to a jury trial "because he didn't understand" the State's sentencing recommendation made as part of the plea offer. After a short discussion with defense counsel, the court ordered a second competency evaluation.

¶12 The doctor completing the competency evaluation concluded that Williams was competent and that he "does not appear to be experiencing legitimate psychiatric symptoms," despite "displaying a seemingly exaggerated reemergence of psychotic symptoms."

¶13 Williams appeared by Zoom at a May 3, 2022 competency hearing, and defense counsel again noted that Williams' signed "Waiver of Right to Personal Appearance" form was still on file. Defense counsel stated that he reviewed the competency report with Williams, that the defense had "no problem with the Court accepting that report and acting upon it," and that the defense was prepared to proceed with a plea hearing consistent with the previous plea offer. However, Williams informed the circuit court that he believed he was incompetent. Later, the court held an evidentiary hearing that Williams participated in by Zoom. The court found that Williams was competent to proceed.

¶14 At an August 9, 2022 status conference, Williams, who appeared in person, again declared his wish to have a jury trial, and a trial date was set for December 2022. Five weeks later, defense counsel submitted a letter to the court requesting that it "set this matter for a Plea Hearing as Mr. Williams has informed

me that he now wishes to proceed under the Pretrial offer." A plea hearing was scheduled for October 13, 2022.

¶15 Williams appeared by Zoom at the plea hearing,[3] and defense counsel again noted that Williams' signed "Waiver of Right to Personal Appearance" form was still on file. Defense counsel further explained that the "Plea Questionnaire/Waiver of Rights" form, signed January 3, 2022, was still on file and that he had reviewed that document with Williams "at least twice."

¶16 The circuit court confirmed that Williams could hear the court and that he was pleading no contest to Count 2. Afterward, Williams agreed that he had received treatment for mental health conditions and was taking medication as part of that treatment. Williams answered, "No," when asked by the court if this treatment interfered with his ability to understand "what's going on today." The court confirmed with Williams that he authorized defense counsel to sign the plea questionnaire; that he reviewed the elements of the offenses with his defense counsel; and that he was not entering the plea due to threats, coercion, or promises. In addition, the court explained the rights Williams was waiving by entering the plea, including his right to a jury trial and his right to confront the State's witnesses. The defense stipulated that the court could use the criminal complaint to conclude that there was a factual basis to support Williams' plea.

¶17 Ultimately, the circuit court accepted Williams' no-contest plea and found that Williams was entering his plea freely, voluntarily, and intelligently, and

___

[3] Defense counsel also appeared at the plea hearing by Zoom because he was in quarantine due to COVID-19.

6

it incorporated into its findings the "Plea Questionnaire/Waiver of Rights" form. Consistent with the plea offer, the court dismissed and read in Count 1.

¶18    Less than one week after the plea hearing, Williams filed a motion to withdraw his no-contest plea. Williams alleged that at the time he entered the plea, he did not understand that he was waiving his right to a jury trial by entering the plea and that he did not "know the charge to which he entered his plea." At a subsequent hearing that Williams attended in person, Williams stated that he wished to withdraw his motion and proceed with sentencing.

¶19    Williams later appeared in person for his sentencing hearing, where the circuit court sentenced him to ten years of initial confinement followed by six years of extended supervision.

¶20    Thereafter, Williams filed a motion seeking postconviction relief, again arguing that he should be permitted to withdraw his no-contest plea. According to Williams, his statutory right to be present at the plea hearing was violated when he appeared by Zoom without the circuit court first obtaining a valid waiver.[4]  *See* WIS. STAT. § 971.04(1)(g). In an oral ruling, the court denied Williams' postconviction motion without an evidentiary hearing after concluding it had properly relied on the "Waiver of Right to Personal Appearance" form at the plea hearing. The court later issued a written order encompassing its oral ruling.

¶21    Williams now appeals.

---

[4] Williams further argued that he was entitled to withdraw his plea because the circuit court failed to advise him of, and he did not know, the maximum penalties for Count 2 at the time he entered his plea. The court denied this claim following an evidentiary hearing. Williams does not challenge that decision, and we will not consider it further.

**DISCUSSION**

¶22 "To withdraw a plea after sentencing, a defendant must prove by clear and convincing evidence that plea withdrawal is required to correct a manifest injustice." *State v. Anderson*, 2017 WI App 17, ¶15, 374 Wis. 2d 372, 896 N.W.2d 364. "The 'manifest injustice' test requires a defendant to show 'a serious flaw in the fundamental integrity of the plea.'" *Id.* (citation omitted).

¶23 Williams contends that a manifest injustice occurred in this case because he did not knowingly, intelligently, and voluntarily waive his statutory right to appear in person at the plea hearing. It is undisputed that Williams had a statutory right, pursuant to WIS. STAT. § 971.04(1)(g), to be present in the same courtroom as the presiding judge during the plea hearing because the circuit court accepted Williams' no-contest plea and pronounced judgment during that hearing. *See State v. Soto*, 2012 WI 93, ¶¶2, 40, 45, 343 Wis. 2d 43, 817 N.W.2d 848 (holding that § 971.04(1)(g) "provides a criminal defendant the statutory right to be in the same courtroom as the presiding judge when a plea hearing is held, if the court accepts the plea and pronounces judgment"). However, it is also undisputed that Williams could waive that right. *See id.*, ¶40.

¶24 Under the facts of this case, we assume without deciding that Williams did not validly waive his statutory right to be present in the courtroom for his plea hearing. *See Anderson*, 374 Wis. 2d 372, ¶42. We conclude, however, that the harmless error rule applies to the assumed violation of Williams'

statutory right to be present at his plea hearing.[5]  Furthermore, as applied to this case, any error regarding Williams' waiver of his statutory right to be present was harmless.

¶25    Whether a particular violation is subject to the harmless error rule and whether the violation was harmless are questions of law subject to our independent review.  *See State v. Nelson*, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317.

¶26    The harmless error statute, WIS. STAT. § 805.18, provides that "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."  Sec. 805.18(1).  "No judgment shall be reversed or set aside … in any action or proceeding … for error as to any matter of … procedure, unless" "it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."  Sec. 805.18(2).

¶27    "For an error to affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue."  *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768.  "A reasonable possibility of a different outcome is a possibility sufficient to undermine confidence in the outcome."  *Id.*

---

[5] Williams does not raise a constitutional challenge to the circuit court's decision to proceed with the plea hearing without his presence in the courtroom.  We note, however, that "[t]he standard for evaluating harmless error is the same whether the error is constitutional, statutory, or otherwise."  *State v. Johnson*, 2012 WI App 21, ¶14, 339 Wis. 2d 421, 811 N.W.2d 441 (citation omitted).

¶28 Our state supreme court has declared that WIS. STAT. § 805.18 accords a "strong presumption" that an error is subject to the harmless error rule; however, structural errors are not subject to the rule because they are "so intrinsically harmful as to require automatic reversal." *Nelson*, 355 Wis. 2d 722, ¶¶29-30 (citations omitted). Structural errors are those errors that "permeate the entire process," "the effect[] of which [is] inherently elusive, intangible, and [therefore] not susceptible to harmless error review." *Id.*, ¶¶33-34 (alterations in original; citation omitted). Such errors include the complete denial of counsel; the denial of counsel of a defendant's choice; the denial of self-representation; and racial discrimination during jury selection. *Id.*, ¶34.

¶29 We are not aware of, and the parties have not directed us to, any binding case law considering whether the harmless error rule applies to a violation of a defendant's right to be present in the courtroom at his or her plea hearing, pursuant to WIS. STAT. § 971.04(1)(g). Nor are we aware of any case addressing this issue under federal law. *See Nelson*, 355 Wis. 2d 722, ¶29 n.8 (stating that Wisconsin's harmless error rule is nearly identical to the federal rule).

¶30 However, courts of this state have held that the harmless error rule applies to violations of WIS. STAT. § 971.04(1) generally. In *State v. Peterson*, 220 Wis. 2d 474, 584 N.W.2d 144 (Ct. App. 1998), for example, this court held that "violations of [§ 971.04], like violations of a defendant's constitutional rights to be present, are subject to harmless error analysis." *Id.* at 489. The court went on to conclude that the defendant's absence from the courtroom when the circuit court responded to the jury's questions constituted harmless error. *Id.* This court has also applied the harmless error rule to a violation of a defendant's right, pursuant to § 971.04(1)(c), to be present during voir dire. *State v. Tulley*, 2001

WI App 236, ¶¶6-7, 248 Wis. 2d 505, 635 N.W.2d 807; *see also* **State v. Harris**, 229 Wis. 2d 832, 839-40, 601 N.W.2d 682 (Ct. App. 1999).

¶31     In fact, Williams does not contend that a violation of WIS. STAT. § 971.04(1)(g) at a plea hearing constitutes a structural error or that such a violation is "so intrinsically harmful as to require automatic reversal." *See* **Nelson**, 355 Wis. 2d 722, ¶30 (citation omitted).  Instead, Williams argues that the harmless error rule should not apply to violations of a defendant's statutory right to be present in the courtroom at a plea hearing because "this was an issue that was explicitly not addressed in *Anderson*."

¶32     In *Anderson*, this court held that a defendant's statutory right to appear in person at his plea hearing was violated.  **Anderson**, 374 Wis. 2d 372, ¶2. We acknowledged the defendant's argument that it was "not clear that the harmless error rule applie[d]" to the statutory violation, but we assumed without deciding that it did.  **Id.**, ¶56.  We then concluded that the State had failed to demonstrate, beyond a reasonable doubt, that the error was harmless.  **Id.**

¶33     As a general rule, this court decides cases on the narrowest possible grounds, *see* **Patrick Fur Farm, Inc. v. United Vaccines, Inc.**, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707, and we "need not address every issue raised by the parties when one issue is dispositive," **Barrows v. American Fam. Ins.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013).  The *Anderson* court applied these principles and explicitly left open the possibility that the harmless error rule may apply to a violation of a defendant's statutory right to appear in person at his or her plea hearing.  Thus, we do not find the *Anderson* court's decision dispositive on this issue.

¶34    Similarly, we are not persuaded by Williams' argument that the harmless error rule does not apply in this context based on our supreme court's decisions in *Soto* and *State v. Koopmans*, 210 Wis. 2d 670, 563 N.W.2d 528 (1997). *Koopmans* involved the statutory right under WIS. STAT. § 971.04(1)(g) of a defendant to be present at sentencing. *Koopmans*, 210 Wis. 2d at 679. The court concluded that this right is mandatory and that a defendant may not waive his or her right to be present at sentencing by knowingly and voluntarily being absent from the proceeding. *Id.* at 679-80. As we explained in *Peterson*, however, "[n]o argument was made" before the *Koopmans* court that the circuit court's "error in treating the defendant's voluntary absence as a waiver was harmless, and the court explicitly did not consider the issue." *Peterson*, 220 Wis. 2d at 487.

¶35    In *Soto*, our state supreme court likewise did not address harmless error after concluding that WIS. STAT. § 971.04(1)(g) provides a criminal defendant the statutory right to be in the same courtroom as the presiding judge when a plea hearing is held. *Soto*, 343 Wis. 2d 43, ¶2. A harmless error analysis would have made little sense, however, because the court concluded that the defendant knowingly, intelligently, and voluntarily waived his right to be present at the plea hearing and agreed to appear by videoconferencing. *See id.*, ¶¶2, 46-49. Accordingly, neither *Soto* nor *Koopmans* stand for the proposition that the harmless error rule does not apply to a violation of a defendant's statutory right to be present in person at his or her plea hearing.

¶36    Consistent with the "strong presumption" that an error is subject to the harmless error rule, *see Nelson*, 355 Wis. 2d 722, ¶29, and this court's previous decisions applying the rule to violations of WIS. STAT. § 971.04(1), we conclude that the rule applies to the violation of a defendant's statutory right to be

present in the same courtroom as the presiding judge at a plea hearing. A violation of a defendant's statutory right in this context is not structural as it does not permeate the entire criminal process—it relates only to the taking of a defendant's plea—and it is not "so intrinsically harmful as to require automatic reversal." *See Nelson*, 355 Wis. 2d 722, ¶30 (citation omitted). Accordingly, we must ask, under the harmless error analysis, whether it is clear beyond a reasonable doubt that Williams would have entered the plea even if he had appeared in person.[6] *See Anderson*, 374 Wis. 2d 372, ¶57; *State v. Martin*, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816 N.W.2d 270 (stating that the burden is on the party who benefited from an error to demonstrate beyond a reasonable doubt that the error was harmless). We conclude that the State has met its burden.

---

[6] Williams incorrectly argues that the harmless error analysis in this context should consider whether the State proved that his waiver was knowing, intelligent, and voluntary. The analysis proposed by Williams is separate from a harmless error analysis. In *Anderson*, we stated that, similar to a *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), motion,

> once a defendant has shown that the circuit court's waiver colloquy was deficient and has asserted … that he or she did not understand he or she had a right to appear in person at the plea hearing, the burden should shift to the State to prove by clear and convincing evidence that the defendant did, in fact, knowingly, voluntarily, and intelligently waive his or her right to be present.

*State v. Anderson*, 2017 WI App 17, ¶¶52-54, 374 Wis. 2d 372, 896 N.W.2d 364.

The *Anderson* court ultimately concluded that the defendant had affirmatively alleged that he did not understand his right to appear in person, and it remanded for a new postconviction evidentiary hearing to determine if the State could meet its burden by clear and convincing evidence. *Id.*, ¶55. We noted, however, that "remand would be unnecessary if, as the State asserts, any error regarding the violation of [the defendant's] right to be present at his plea hearing was harmless as a matter of law." *Id.*, ¶56. Assuming the harmless error rule applied, we then considered whether it was clear beyond a reasonable doubt that the defendant would have pled guilty even if he had appeared in person. *Id.*, ¶¶56-57.

¶37    Significantly, Williams appeared at his plea hearing by audiovisual means. *See Anderson*, 374 Wis. 2d 372, ¶5 (defendant appeared by audio only). Furthermore, nothing in the record suggests that the videoconferencing technology was not functioning properly. Indeed, the circuit court engaged in a plea colloquy with Williams prior to accepting his no-contest plea, and Williams informed the court that he did not have any questions about "what's going on today" or "about the crime to which" he was pleading no contest.

¶38    Furthermore, Williams has failed to allege that he did not understand any aspect of his plea, much less that he did not understand his plea due to his virtual appearance. The circuit court—in its decision denying Williams' postconviction claim that he was not informed of, and did not know, the maximum penalties he could face if convicted—concluded that Williams knowingly, intelligently, and voluntarily entered his plea. The court found credible defense counsel's testimony at the evidentiary hearing that he met with Williams during the pendency of the case "on at least" 25 occasions to discuss "the charges and maximum potential penalties." The court further credited defense counsel's testimony that he had discussed the "Plea Questionnaire/Waiver of Rights" form with Williams "and ensured that Williams had a complete understanding of these documents," including the maximum penalties for second-degree sexual assault of a child.

¶39    According to the circuit court, Williams "actually appeared to understand the ['Plea Questionnaire/Waiver of Rights'] form prior to" completing the document. The court's finding in this regard is supported by the doctor's finding months before the plea hearing that Williams was competent and that he did "not appear to be experiencing legitimate psychiatric symptoms," despite "displaying a seemingly exaggerated reemergence of psychotic symptoms." In

any event, Williams does not challenge any of the court's factual findings as being clearly erroneous.

¶40    Relying on *Anderson*, Williams contends that it is significant that he filed a motion to withdraw his plea prior to sentencing because it shows that he would have withdrawn his plea before sentencing "if he had known he had a legal basis for doing so."  We disagree.  In *Anderson*, the State argued that the defendant would have pled guilty even if he had appeared in person, as evidenced by the fact that the defendant "reaffirmed" his guilty plea at the sentencing hearing.  *Anderson*, 374 Wis. 2d 372, ¶57.  This court rejected the State's reasoning because the record demonstrated that had the defendant been made aware that there was a basis to request a plea withdrawal prior to sentencing, he would not have reaffirmed his plea at sentencing.  *Id.*, ¶58.

¶41    Although Williams moved to withdraw his plea prior to sentencing, he did not base that motion on his absence from the courtroom during his plea hearing.  Moreover, this case is distinguishable from *Anderson* because Williams withdrew his motion while in person at a subsequent hearing, stating to the circuit court, "I want to be sentenced."  In other words, there is no evidence in the record connecting Williams' appearance at the plea hearing by Zoom and his one-time desire to withdraw his plea due to not understanding that he was waiving his right to a jury trial by entering the plea or the charge to which he was pleading.

¶42    Williams further argues that the facts presented are analogous to those in *Anderson* because here the circuit court "failed to confirm that Mr. Williams could see the court or attorneys, that he could hear the attorneys, or that he was told—or even able—to meet privately with his attorney."  Again, we disagree.  Williams does not state that he could not see or hear the court or

attorneys during his plea hearing, and nothing in the record would support such a claim. Further, even if Williams could not see defense counsel or meet privately with him, there is nothing in the record suggesting that these facts contributed to him entering his no-contest plea. *See Evelyn C.R.*, 246 Wis. 2d 1, ¶28. Indeed, Williams has made no showing how his plea hearing would have transpired in any different way had he appeared in person.

¶43 In all, the State has satisfied its burden to show beyond a reasonable doubt that Williams would have entered his no-contest plea to Count 2 even if he had been present in the courtroom, as opposed to appearing by Zoom, for his plea hearing. Therefore, any violation of his statutory right to be present for the plea hearing was harmless.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.